388 A.2d 1361

COMMONWEALTH of Pennsylvania, Appellee,

v.

**Elmore E. MARTIN, Appellant (two cases).**

Supreme Court of Pennsylvania.

Submitted Jan. 10, 1978.

Decided July 14, 1978.

610

David E. Auerbach, Robert F. Pappano, Asst. Public Defenders, Chester, for appellant.

Ralph B. D'Iorio, Asst. Dist. Atty., Chief, Appeals Division, Vram Nedurian, Jr., Asst. Dist. Atty., for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO and LARSEN, JJ.

## OPINION OF THE COURT

EAGEN, Chief Justice.

Elmore E. Martin was tried before a jury in the Court of Common Pleas of Delaware County and was found guilty of voluntary manslaughter, possession of instruments of crime, and crimes committed with a firearm. Post-verdict motions were filed and subsequently denied. Judgment of sentence of three to six years imprisonment was imposed on the manslaughter conviction and judgments of sentence on the other convictions were suspended. These appeals followed.[1]

Martin argues the trial court erred in denying his application to dismiss the charges with prejudice on the ground the

---

1. In addition to the assignments of error discussed, Martin raises the following arguments which we conclude are without merit: 1) the trial court erred in allowing a police officer to testify despite an alleged violation of a sequestration order; 2) the trial court abused its discretion in allowing a forensic pathologist to testify out of order; 3) the trial court erred in allowing a witness to testify despite an alleged failure to determine if the jurors were familiar with the witness; 4) the trial court erred in refusing to instruct a witness to respond to certain questions by defense counsel; 5) the trial court erred in restricting direct examination of Martin by defense counsel; 6) the trial court erred in advising the jury of the reason for an early recess; 7) the trial court erred in refusing to grant a mistrial because of certain remarks made by the attorney for the Commonwealth in closing; 8) the trial court erred in refusing to grant a mistrial because of certain remarks made by and an "attitude" displayed by the court toward defense counsel; and, 9) the trial court erred in refusing to grant a demurrer or a directed verdict to the charge of murder of the second degree.

612

Commonwealth failed to commence trial within the mandatory period of Pa.R.Crim.P. 1100. *Inter alia*, Section (f) of Rule 1100 provides:

"At any time *before trial*, the defendant or his attorney may apply to the court for an order dismissing the charges with prejudice on the ground that this Rule has been violated." [Emphasis added.]

Section (b) of Rule 1100 provides:

"For the purpose of this Rule, trial shall be deemed to commence on the date the trial judge calls the case to trial."

 Instantly, the record establishes defense counsel made an oral application to dismiss the charges prior to the swearing of the jury, but subsequent to the selection of the jury through voir dire.[2] While the comments to our Rules

2. The record in pertinent part reads:

"[Assistant District Attorney:] If the court please, the Panel seated in the Jury box, Court Room No. 2, the time being 3:15 P.M., April 15, [1975] were selected by [defense counsel] and myself before Judge Reed in the Orphans Court.

"The Court: You selected this Jury to proceed with the trial of whom?

"[Assistant District Attorney:] Elmore Martin.

"The Court: Is it your desire to open today or tomorrow? What is your application?

"[Assistant District Attorney:] The application is to swear the Jury tomorrow morning and open immediately thereafter.

"[Defense Counsel:] Defense concurs with that, Your Honor.

"The Court:

&ast; &ast; &ast; &ast; &ast; &ast;

"You [the jury] are excused until tomorrow morning at 10:00 o'clock and report in this Court Room.

"(AT 3:15 O'CLOCK P.M. THE COURT THEN RECESSED UNTIL WEDNESDAY MORNING, APRIL 16, 1975 AT 10:00 O'CLOCK A.M.)

"(SIDE BAR CONFERENCE HAD IN CHAMBERS AND THE FOLLOWING TRANSPIRED.)

"The Court: Let the record show the time is now 3:25 P.M.

"What is your application?

"[Defense Counsel:] Since this is my application under Rule 1100, Dismissal With Prejudice, I would like to recite a brief recitation as to the facts as I know them. Of course, [the Assistant District Attorney] will have a chance to reply."

are not binding, they are useful tools for resolution of questions of interpretation under the Rules. The Comment to Rule 1100 provides, in pertinent part:

> "It is not intended that preliminary calendar calls should constitute commencement of a trial. A trial commences when the trial judge determines that the parties are present and *directs them to proceed to voir dire,* or to opening argument, or to the hearing of any motions which had been reserved for the time of trial, or to the taking of testimony or to some other such first step in the trial."
> [Emphasis added.]

Since the voir dire had been completed before defense counsel made his oral[3] application and since voir dire is considered a first step in the trial for purposes of Rule 1100, see *Commonwealth v. Lamonna,* 473 Pa. 248, 259, 373 A.2d 1355, 1360 (1977), the application was untimely and should have been denied for that reason.[4] *Cf. Commonwealth v. Perkins,* 473 Pa. 116, 373 A.2d 1076 (1977). Compare *Commonwealth v. Lamonna, supra.* Accordingly, this assignment of error is overruled.

■ Martin argues the trial court erred in denying his motion for a mistrial following certain testimony of an

Discussion ensued and the application was denied and court recessed. Court reconvened on April 16, 1975, at 10:05 a. m., at which time the jury was polled and sworn.

Finally, the docket entries of record establish that voir dire took place as early as April 14, 1975. Thus, the record establishes that the jury was chosen prior to the oral application being made.

3. We need not now decide whether the failure to reduce a Rule 1100 application to writing will constitute a waiver. Compare *Commonwealth v. Blair,* 460 Pa. 31, 331 A.2d 213 (1975). But a written requirement is clearly contemplated by Section (f) of Rule 1100 wherein a mandate that a copy be served upon the attorney for the Commonwealth is set forth. Instantly, it suffices to say defense counsel would be well advised to file *written* applications for they serve the laudable purposes of providing certainty in the record and specific allegations to which the Commonwealth can respond. See *Commonwealth v. Grace,* 473 Pa. 542, 375 A.2d 721 (1977).

4. While the trial court did not rule the application was untimely and while the Commonwealth has not so argued, enforcement of our Rule is a matter which we can raise sua sponte. Cf. *Commonwealth v. Triplett,* 476 Pa. 83, 381 A.2d 877 n. 10 (1977) and cases cited therein.

eyewitness, Francine Robinson, during cross-examination. The background is this:

Francine Robinson was the Commonwealth's first witness, and testified during direct that the victim, Neil Robinson, was "standing straight up" when shot. At the conclusion of her direct testimony, defense counsel sought to have "two young ladies" removed from the courtroom because they had accompanied Francine Robinson to the courtroom, because a sequestration order had been entered, and because a forensic pathologist was going to testify prior to cross-examination of Francine Robinson. The request of defense counsel was denied. The forensic pathologist then testified, in effect, that the victim had to have been "falling forward or leaning forward" when shot. At the conclusion of the pathologist's testimony, the court recessed for an hour and forty-five minutes. Following the recess, Francine Robinson was called for cross-examination during which the following occurred:

"Q. Did your husband start to chase Mr. Martin?

"A. No. The only thing that he did was take and push me and I slid under the table because my slippers were slippery and I slid under the table and the position that I showed you earlier today, that is the way I was laying and the only thing that I seen, that I seen my husband standing straight up. All right. Then I turned my eyes and I seen him when he pointed that gun straight at my husband. Maybe he *bented* because I don't have four pair of eyes to see which way—maybe he bented or something.

"Q. Maybe he what?

"A. Maybe he bent over or something. I don't know.

"Q. Will you please repeat that.

"A. I said, maybe he bented over or something. I don't know." [Emphasis added.]

Defense counsel requested a side-bar conference during which he moved for a mistrial because he had not asked about Neil Robinson's position, because the pathologist was

the only witness to testify about "bending over," and because it was evident "the two ladies sitting in the courtroom discuss[ed] this with [the witness] at luncheon recess . . ." The court denied the motion, recessed for five minutes, and convened an in-chambers conference. Defense counsel at conference moved for a mistrial and pointed out to the court that Robinson had not testified during direct her husband was bent over, rather she testified he stood up straight; that the testimony of the pathologist was crucial to impeaching Robinson; and, that he believed the sequestration order was violated. The motion was denied. The Commonwealth then pointed out that previously Robinson had been made aware of the medical report.

Martin asserts the court's refusal to grant a mistrial because of the testimony that the victim was bent over constitutes reversible error since it shows the sequestration order had been violated by Francine Robinson and her companions. On this record, we cannot conclude a violation of the sequestration order has been established. The mere fact that Francine Robinson testified in this manner does not necessarily show such a violation. Furthermore, despite the explanation by the Commonwealth, defense counsel did not attempt to show by additional cross-examination a violation, in fact, occurred. Cf. *Commonwealth v. Smith,* 464 Pa. 314, 346 A.2d 757 (1975).

█ Martin argues the trial court erred in refusing to preclude another eyewitness, Willie Robinson, from testifying because he allegedly was in the courtroom in violation of the sequestration order and because he was seen speaking with Francine Robinson and her companions. The background is this:

When the objection to Willie Robinson appearing as a witness was made, the Commonwealth's attorney responded that he observed Robinson's absence from the courtroom and that Robinson had been advised of the sequestration order.

Defense counsel reiterated his objection because Willie Robinson had been seen conversing with Francine Robinson and her two companions. The court overruled the objection. A legal assistant to defense counsel then stated he had observed the conversation, which lasted five to ten minutes at a recess the prior day, between Willie Robinson, Francine Robinson, "her mother and the other lady who accompanied her." The court asked if the assistant knew what they conversed about, and the assistant responded he did not. The court denied the motion to disqualify the witness.

Despite the observation of Willie Robinson's absence from the courtroom by the Commonwealth's attorney and the admission by the legal assistant that he did not know the content of the conversation, defense counsel did not pursue the matter during cross-examination to show that the sequestration order had, in fact, been violated. Since we are unwilling to presume either that the witness was in the courtroom or that the conversation involved trial matters, Martin's argument must be rejected. Cf. *Commonwealth v. Smith, supra; Commonwealth v. Martin,* 440 Pa. 150, 269 A.2d 722 (1970).

Finally, Martin argues the trial court erred in allowing Willie and Francine Robinson to be called by the Commonwealth in rebuttal because of the alleged violations of the sequestration order and because the witnesses were allowed in the courtroom following their direct testimony. The record reflects the court considered the scope of its sequestration order as limited to witnesses testifying during the case-in-chief, because the court inquired of the Commonwealth at the time of objection whether the testimony would only be in rebuttal and received an affirmative response. Since the question of whether to sequester witnesses is initially one within the discretion of the trial court, *Commonwealth v. Yount,* 455 Pa. 303, 314 A.2d 242 (1974), *a fortiori* the scope of any order granting sequestration is also

within the court's discretion and its decision to limit the order to testimony received in the cases-in-chief will not be held reversible error absent a clear abuse of discretion. We cannot say the court abused its discretion in allowing the witnesses to testify in rebuttal, particularly since the direct testimony received in rebuttal was merely a reiteration of that received in the Commonwealth's case-in-chief.[5] Cf. *Commonwealth v. Yount, supra; United States v. Wolk,* 398 F.Supp. 405 (D.C.Pa.1975).

Judgments of sentence are affirmed.

MANDERINO, J., files a dissenting opinion.

MANDERINO, Justice, dissenting.

I agree with the statement of the majority that this Court may, in certain situations, raise matters sua sponte. *See* majority opinion p. 1364, footnote 4. Sua sponte consideration of issues, however, is fraught with dangers, and this case illustrates what can happen when we address issues without having the benefit of counsel's advocacy on the specific issue considered.

It appears from the record, see majority opinion, p. 1363, footnote 2, that the jury in the instant case was selected before a different judge than the one scheduled to try the case. No explanation is given us to why this procedure was employed.

What is apparent, however, is that counsel might have reasonably believed that his Rule 1100 motion could be made after voir dire because the voir dire was not conducted by the trial judge. I would therefore order that the case be set for reargument to consider the issue of whether, under the facts of this case, trial had actually commenced for Rule 1100 purposes.

---

**5.** We note that counsel did not request the court to caution the jury that the testimony was being received despite the presence of the witnesses in the courtroom.