893 A.2d 1275

**PUBLIC DEFENDER'S OFFICE OF
VENANGO COUNTY, Petitioner**

**v.**

**VENANGO COUNTY COURT OF COMMON
PLEAS, Respondent.**

Supreme Court of Pennsylvania.

Argued May 18, 2005.

Decided March 24, 2006.

318

Jason Richard Lewis, for Public Defender's Office of Venango County, petitioner.

Pamela R. Logsdon, for the Com. of PA, respondent.

David Michael Donaldson, Philadelphia, for Venango County Court of Common Pleas, respondent.

BEFORE: CAPPY, C.J., CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and BAER, JJ.

## *OPINION*

Justice BAER.

At issue is whether the Venango County Court of Common Pleas may order a public defender acting in his official capacity (as opposed to having been privately appointed with compensation additional to his public defender salary) to serve as standby counsel for a *pro se* criminal defendant, who previously had been denied public defender representation because his annual income exceeded the financial guidelines established by the Venango County Public Defender's office (herein, "the Public Defender's Office"). For the reasons that follow, we hold that within the circumstances of this case the trial court was vested with the discretionary power to appoint counsel from the Public Defender's Office to serve as standby counsel for a *pro se* criminal defendant, who was previously determined to be financially ineligible for representation by that office.

Robert Bettelli (Bettelli) was charged with two counts of rape, two counts of involuntary deviate sexual intercourse, one count of aggravated indecent assault, and one count of indecent assault.[1] At a March 3, 2004 preliminary hearing, while

1. 18 Pa.C.S. §§ 3121, 3123, 3125, and 3126, respectively.

represented by private counsel Michael Hadley, Esquire, Bettelli was held for trial on all charges. On May 18, 2004, the trial court held a pre-trial conference and scheduled trial for August of 2004. On August 20, 2004, prior to the commencement of trial, Attorney Hadley petitioned to withdraw from the case because of Bettelli's failure to pay his retainer. The trial court granted Attorney Hadley's motion. On September 24, 2004, during another pre-trial conference, Bettelli decided to proceed *pro se* after an on the record colloquy. The trial judge found that Bettelli was competent to waive his right to counsel and understood that he was required to proceed to trial *pro se* if he did not retain new private representation. Acting on his own behalf, Bettelli moved for a continuance, which was granted.

Shortly thereafter, notwithstanding his stated intent to proceed *pro se*, Bettelli applied to the Public Defender's Office for representation. Attorney John C. Lackatos, the Chief Public Defender at that time, determined that Bettelli's income exceeded the maximum permitted for Public Defender representation and, therefore, declined his office's services. Thereafter, Bettelli again waived his right to counsel, on the record, and chose to proceed *pro se*.

The case was scheduled to be heard during the November 2004 trial term. Bettelli filed another *pro se* motion for a continuance, stating that his employment prevented his attendance for jury selection.[2] The trial court granted the continuance, and placed the matter on the December 2004 trial list. On November 30, 2004, the Commonwealth filed a motion for a continuance, and requested that the court set a specific date for trial, arguing that it was calling expert witnesses and needed advance notice to secure their attendance. The trial court granted the motion, and set March 7, 2005 for jury selection and March 17, 2005 for trial. Bettelli filed a third *pro se* motion for a continuance on February 6, 2005, stating that he was attempting to finance a retainer to

2. Although not entirely clear from the record, it appears that pending trial, Bettelli was released on bond and continued employment as an over-the-road truck driver during the proceedings.

secure private counsel. The trial judge denied that motion, directing Bettelli to be present for jury selection on March 7, 2005, with or without counsel.

On March 7, 2005, before jury selection began, the Commonwealth filed a motion requesting that the court appoint standby counsel. The Commonwealth expressed concern that the juvenile victim would be further traumatized if Bettelli, who allegedly raped her, was permitted to conduct her cross-examination. The court conducted a colloquy with Bettelli, at which time he again requested a continuance to obtain private representation. The court determined that Bettelli had ample opportunity to obtain private counsel and directed him to proceed with trial *pro se*. The court further ordered an attorney from the Public Defender's Office, in his official capacity, to act as standby counsel,[3] even though that office had previously found Bettelli financially ineligible for representation. The trial court determined that the Public Defender's Office was best suited to represent Bettelli because its lawyers were available and qualified to provide Bettelli with effective assistance. Additionally, given the small size of the Venango County bar, no other lawyer with sufficient experience to represent Bettelli effectively was available. Finally, the court considered the fact that the Commonwealth was prepared to proceed and the case had already experienced multiple delays.[4]

**3.** The trial court relied upon Pa.R.Crim.P. 121(D), which provides in pertinent part:

> (D) Standby Counsel
> When the defendant's waiver of counsel is accepted, standby counsel may be appointed for the defendant. Standby counsel shall attend the proceedings and shall be available to the defendant for consultation and advice.
> Pa.R.Crim.P. 121(D).

**4.** The court relied upon Pa.R.Crim.P. 122(C)(1), amended August 1, 2005, now at Pa.R.Crim.P. 122(A)(3), as justification for specifically choosing the Public Defender's Office to represent Bettelli. That provision provides as follows:

> Rule 122. Assignment of Counsel
> (C) In All Cases.
> (1) The court, of its own motion, shall assign counsel to represent a defendant whenever the interests of justice require it.

In response to the trial court's appointment of a member of the Public Defender's Office as standby counsel, on March 11, 2005, the Chief Public Defender filed a petition for a writ of prohibition with this Court. Through the writ of prohibition, the Public Defender sought to invalidate the trial court's appointment of standby counsel arguing that the appointment order violated the Public Defender's right to determine qualifications for representation by the office pursuant to the Public Defender Act (hereinafter "the Act"), 16 P.S. §§ 9960.1, *et seq.* Specifically, the Public Defender argued that the Act was created to allow a public defender to determine whom it would represent based on a defendant's finances and his or her inability to obtain legal counsel otherwise. The Public Defender asserted that once it determined Bettelli was ineligible for representation, the court could not *sua sponte* appoint a member of the office. The Public Defender cited its duties with respect to furnishing legal services to those unable to afford representation, pursuant to 16 P.S. § 9960.6, which states:

§ 9960.6. Duties

(a) The public defender shall be responsible for furnishing legal counsel, in the following types of cases, to any person who, for lack of sufficient funds, is unable to obtain legal counsel:

   (1) Where a person is charged with juvenile delinquency;

   (2) Critical pretrial identification procedures;

   (3) Preliminary hearings;

   (4) State habeas corpus proceedings;

   (5) State trials, including pretrial and post trial motions;

   (6) Superior Court appeals;

   (7) Pennsylvania Supreme Court appeals;

   (8) Post-conviction hearings, including proceedings at the trial and appellate levels;

   (9) Criminal extradition proceedings;

Pa.R.Crim.P. 122(C)(1).

(10) Production and parole proceedings and revocation thereof;

(11) In any other situations were representation is constitutionally required.

(b) The public defender, after being satisfied of the person's inability to procure sufficient funds to obtain legal counsel to represent him, shall provide such counsel.

Every person who requests legal counsel shall sign an affidavit that he is unable to procure sufficient funds to obtain legal counsel to represent him and shall provide, under oath, such other information as may be required by the court, the public defender, or the Pennsylvania Rules of Criminal Procedure.

\* \* \*

16 P.S. § 9960.6.

The Public Defender argued that its appointment as counsel conflicts with this Court's decision in *Dauphin County Public Defender's Office v. Court of Common Pleas of Dauphin County,* 578 Pa. 59, 849 A.2d 1145 (2004) (holding, in considering a writ of prohibition, that the court of common pleas lacked authority to dictate to the county public defender's office criteria for representation of applicants seeking its services). While acknowledging that it was not directly on point, the Public Defender's Office viewed *Dauphin County* as instructive regarding whether a public defender must represent someone deemed by its office to be financially ineligible under the Act. The petition for writ of prohibition further requested that our Court stay the trial proceedings pending a determination of whether the trial court had the authority to make the appointment at issue.

By an order dated March 16, 2005, this Court denied the requested stay and, consequently, permitted the trial to move forward. We did not dismiss the writ of prohibition, however, and thereafter directed the parties to brief and argue the issue *sub judice.* Simultaneously, Bettelli proceeded to trial *pro se* on March 17, 2005, with an attorney from the Public Defender's Office acting as standby counsel. Bettelli

was ultimately convicted of all charges. The matter presently before us involves our disposition of the writ of prohibition only.[5] While it is not of record herein, we presume that Bettelli's criminal case is proceeding along its own separate track.

Before we address the merits of the issue in this case, we must consider two procedural issues asserted by the Administrative Office of the Pennsylvania Courts (the AOPC), representing the Venango County Court of Common Pleas.[6] First, the AOPC contends that the Public Defender inappropriately pursued this matter by way of a writ of prohibition. Specifically, it suggests that there were other available appellate avenues of relief to the Public Defender and that a writ of prohibition is only proper when such other avenues are unavailable. Second, the AOPC argues that because the underlying trial in this matter proceeded and concluded following our denial of a stay, the issue is now moot as there is no live case or controversy that this Court's decision, one way or another, will impact.

▆▆▆▆ We address, first, the issue of mootness. The AOPC correctly points out the axiomatic principle that, in general, courts will not decide moot questions. *See Sierra Club v. Pennsylvania PUC*, 702 A.2d 1131 (1996), *affirmed, Sierra Club v. PUC*, 557 Pa. 11, 731 A.2d 133 (1999) (holding that courts will dismiss an appeal as moot unless an actual case or controversy exists at all stages of the judicial or administrative process). In this regard, our Court has stated that:

5. We note that because the instant appeal hinges upon a question of law, our standard of review is plenary. *Commonwealth v. Haag*, 570 Pa. 289, 809 A.2d 271 (2002).

6. Counsel for the AOPC represents the Venango County Court of Common Pleas pursuant to Pennsylvania Rules of Judicial Administration, which provide that the AOPC shall have the power "to provide to personnel of the [unified judicial] system legal services and, when appropriate, representation by legal counsel." Pa.R.J.A. 505(15). "Personnel of the system" is defined as "judges and other judicial officers, their personal staff, the administrative staff of courts and justices of the peace, and the staff of the Administrative Office and other central staff." Pa.R.J.A. 102.

> This Court generally will not decide moot questions.... [W]e [have] summarized the mootness doctrine as follows: The cases presenting mootness problems involve litigants who clearly had standing to sue at the outset of the litigation. The problems arise from events occurring after the lawsuit has gotten under way—changes in the facts or in the law—which allegedly deprive the litigant of the necessary stake in the outcome. The mootness doctrine requires that an actual case or controversy must be extant at all stages of review, not merely at the time the complaint is filed.

*Pap's A.M. v. City of Erie,* 571 Pa. 375, 812 A.2d 591, 599–600 (2002) (citations omitted).

■ While it does indeed appear that the issue before us for review, at this juncture, is moot, as trial has taken place with the Public Defender serving as standby counsel, review is not necessarily precluded. Various well recognized exceptions to the mootness doctrine permit a court's review of issues that are, in fact, moot. One such exception is the doctrine of "capable of repetition yet evading review":

> Exceptions to this principle are made where the conduct complained of is capable of repetition yet likely to evade review, where the case involves issues important to the public interest or where a party will suffer some detriment without the court's decision.

*Sierra Club,* 702 A.2d at 1135.

Anticipating our likely consideration of the capable of repetition yet evading review exception to the mootness doctrine under the circumstances of this case, the AOPC asserts that were we to consider such exception, we should conclude that it is not met *sub judice.* In this regard, while the AOPC concedes that the matter under review is capable of repetition, it asserts that it is not likely to evade review. Specifically, the AOPC suggests that if this scenario were to occur again, the Public Defender could simply challenge the appointment by either seeking interlocutory appeal of such order or by seeking the court to certify the issue for appeal. Thus, the AOPC posits, the issue could be reviewed in a future case through

these alternative mechanisms, which, therefore, militates against our consideration of the matter now.

We disagree with the AOPC that the above-suggested alternative mechanisms would result in review of the issue at bar thus precluding our need to review it at this stage. Pursuant to Pa.R.Crim.P. 600, a trial must commence 365 days from the date on which the complaint is filed, if the defendant has been released on bail. *See* Pa.R.Crim.P. 600(A)(3). Likewise, the Rule requires an incarcerated defendant be tried within 180 days. *See* Pa.R.Crim.P. 600(E). Under either of the scenarios suggested by the AOPC, a defendant's constitutional right to a speedy trial would be implicated and, thus, whether a certified appeal and/or interlocutory appeal were sought by the public defender, as distinct from any defendant, regarding the appointment as standby counsel at the request of the Commonwealth, the adjudication of the appeal could presumably result in the loss of the prosecution. Thus, it does not appear that trial could be delayed while an appeal of the issue was being pursued without the potential of a hampered prosecution and, if, conversely, the trial was conducted, we would face the same mootness argument made herein. Thus, we conclude that the issue is one that is capable of repetition, yet likely to evade review.[7]

Regarding the writ of prohibition claim, the AOPC contends, without significant development, that as this matter could have been pursued through certification or interlocutory appeal, use of a great writ was improper. For all of the reasons explained above as to why an interlocutory appeal could implicate Bettelli's right to a speedy trial, the AOPC's argument fails. The only jurisprudentially sound way for this case to be reviewed by this Court without jeopardizing the Commonwealth's right to prosecute the defendant was to

---

7. It warrants our acknowledgement that the mootness resulting here was caused, in part, by our own action in denying the requested motion for stay. However, we were faced with the quandary explained above. If we had granted the stay, Bettelli's right to a speedy trial may have been jeopardized implicating Rule 600.

permit the writ of prohibition, deny the stay and invoke the capable of repetition but evading review doctrine.[8]

Finally, we note that this Court has original jurisdiction to entertain the writ pursuant to 42 Pa.C.S. § 721(2), which specifies our jurisdiction over matters involving "prohibition to courts of inferior jurisdiction." Our Court, at this juncture, has permitted the merits of the claim to go forward. While we find on the merits that relief pursuant to the writ is unwarranted, as will be discussed fully herein, we reject the notion that at this stage we should decline a merits analysis on the grounds that there might have been a different procedural track available to the Public Defender's Office.

■ Accordingly, we turn to the merits of the issue. The Public Defender contends that ordering it to act as standby counsel for Bettelli shifts the "limited resources of the Public Defender from eligible parties and unfairly reallocates them to ineligible parties." The Public Defender asks our Court to rule that the trial court's authority cannot be used to appoint a public defender to represent a defendant who it has previously deemed ineligible for the public defender's services. It posits that the court's authority to appoint standby counsel cannot override or obviate the Public Defender's discretion to determine who qualifies financially for that office's services. The Public Defender asserts that the primary authority for determining indigence and eligibility for services lies directly with the Public Defender.

The AOPC responds that the trial court properly appointed the Public Defender as standby counsel under the circumstances of this case pursuant to Pa.R.Crim.P. 121(D) and 122(C)(1). It argues that it is within the trial court's discretion to appoint standby counsel as deemed necessary, after conducting a waiver of counsel hearing, which is exactly what occurred here.

8. We note also that the AOPC never moved to quash the writ or otherwise voiced objection to this procedure, until they filed their brief to this Court. Thus, while we find it unnecessary to develop, we believe a waiver analysis would also preclude this objection at this juncture.

As noted previously, Pa.R.Crim.P. 121(D) authorizes a judge to appoint standby counsel when it determines that a defendant appropriately waives the right to counsel. Pa.R.Crim.P. 122(C)(1) further permits a trial court to appoint counsel *sua sponte* whenever the interests of justice so require. In this unique situation, it was entirely appropriate for the trial court to appoint the Public Defender, even though the Public Defender previously had denied Bettelli representation based on his financial status. The trial judge stated a multitude of reasons for his appointment of the Public Defender and determined that, in this instance, justice required the appointment. The court reasoned that Venango County, a small rural jurisdiction, had only approximately fourteen attorneys who had tried criminal cases in the two years previous to this case. Of those attorneys, the court determined that approximately ten were qualified to defend against a felony-level charge. Included in that list of ten was Attorney Hadley, who had represented Bettelli previously, and who had withdrawn due to Bettelli's failure to pay him for his legal services. The court determined that he was not an appropriate candidate for appointment. At the time, there were three qualified attorneys in the Public Defender's Office with caseloads which permitted this representation. The trial court stated that it was concerned with the amount of time that transpired as a result of the granted continuances. The court was cognizant that the District Attorney requested a specific scheduling date to arrange for the appearance of Commonwealth witnesses. As Bettelli attempted to stall proceedings by requesting continuances to obtain counsel, the trial court determined it had reached a point where it needed to force Bettelli to trial.

Thus, we find no flaw in the trial court's reasoning. Indeed, the court appears to have weighed with care the competing interests in this case and reached an eminently reasonable compromise. Considering the unique facts in this situation, we hold it was proper for the trial court to appoint the Public Defender pursuant to Pa.R.Crim.P. 121(D) and 122(C)(1) in the interests of justice.

As noted, the Public Defender's Office additionally asserts that the Court of Common Pleas' ability to appoint counsel conflicts with our Court's decision in *Dauphin County* where the trial court entered an administrative order specifying income levels based on the Federal Poverty Income Guidelines, which if exceeded would disqualify the applicant for public defender representation. The Dauphin County Public Defender's Office filed a writ of prohibition arguing that the Dauphin County Court of Common Pleas did not have authority to set eligibility criteria for public defender services. Our Court agreed, and vacated the trial court's administrative order. We found that the Act specifically provided that if the public defender was "satisfied" with a person's inability to procure sufficient funds to hire private counsel, it was to provide that person with representation. *Dauphin County*, 849 A.2d at 1149 (relying on 16 P.S. §§ 9960.1–.13). Thus, we concluded that the trial court lacked authority to dictate eligibility requirements for representation by the public defender.

*Dauphin County* is distinguishable from the case at bar. In *Dauphin County* the trial court attempted to limit systematically those who qualify for representation by the Public Defender by dictating eligibility requirements. *Dauphin County* did not speak, however, to the issue of whether the trial court may supplant the Public Defender's denial of representation for compelling reasons on infrequent occasions when required by "the interests of justice." *See* Pa.R.Crim.P. 122(C)(1).

Under the narrow facts of this case, the court acted within its province in appointing the Public Defender as standby counsel, and did not infringe upon our holding in *Dauphin County*. While we determined that a bright-line financial requirement to determine qualification for representation could not be imposed on the Public Defender's Office in *Dauphin County*, we cannot find that the Public Defender is the final authority in declining representation when the interests of justice require appointment.

Accordingly, based on the foregoing, the writ of prohibition filed by the Public Defender's Office is denied.

Chief Justice CAPPY and Justices SAYLOR and EAKIN join the opinion.

Former Justice NIGRO did not participate in the decision of this case.

Justice CASTILLE files a dissenting opinion.

Justice NEWMAN files a dissenting opinion.

Justice CASTILLE, dissenting.

The Majority holds that the order below, which involuntarily drafted the Venango County Public Defender to serve as free standby counsel for a non-indigent criminal defendant who elected to represent himself *pro se,* is reviewable via the Public Defender's Petition for a Writ of Prohibition, notwithstanding that the case is moot, and that the Writ was inappropriately invoked in a case where there is no allegation that the trial court acted either without jurisdiction or beyond its authority. On the merits of the question, the Majority approves of the appointment order below by deeming it an "entirely appropriate" exercise of the trial court's authority and "an eminently reasonable compromise" on the "unique" facts presented. I respectfully disagree with both the Majority's decision to entertain this Petition and its analysis of the propriety of the lower court's appointing free counsel to an ineligible defendant. Moreover, I believe that we should refer this matter to the Criminal Procedural Rules Committee to analyze Pa.R.Crim.P. 121 and 122 and consider revisions that would make clear that it is inappropriate to automatically appoint taxpayer-subsidized counsel to ineligible, non-indigent defendants whenever they waive their right to counsel.

## I.   PROPRIETY OF THE WRIT OF PROHIBITION TO REVIEW A ROUTINE ORDER APPOINTING STANDBY COUNSEL

The Majority's ultimate mandate consists of a denial of the request for a Writ of Prohibition, which is inevitable because

defendant Robert Bettelli has already been tried and convicted with the Public Defender serving involuntarily as his court-appointed standby counsel; thus, it is far too late to prohibit the appointment which is at "issue" here. The Majority's ineffectual mandate, thus, is but the epilogue to a purely advisory opinion. The Majority recognizes that the instant litigation is moot, but it nevertheless holds that the standby counsel appointment order falls within the "capable of repetition yet evading review" exception to mootness. In so holding, the Majority rejects out of hand the cogent argument forwarded by the Administrative Office of Pennsylvania Courts ("AOPC") that, if a similar instance of forced representation were to recur, the Public Defender could seek redress through non-extraordinary means—*i.e.,* either by seeking review as of right under the collateral order doctrine, *see* Pa. R.A.P. 313, or by seeking a permissive interlocutory appeal. *See* Pa.R.A.P. 312 & Chapter 13. The Majority believes that these normal avenues of appellate review are unavailable as a result of Pa.R.Crim.P. 600. The Majority states that:

> Pursuant to Pa.R.Crim.P. 600, a trial must commence 365 days from the date on which the complaint is filed, if the defendant has been released on bail. *See* Pa.R.Crim.P. 600(A)(3). Likewise, the Rule requires an incarcerated defendant be tried within 180 days. *See* Pa.R.Crim.P. 600(E). Under either of the scenarios suggested by the AOPC, a defendant's constitutional right to a speedy trial would be implicated and, thus, whether a certified appeal and/or interlocutory appeal were sought by the public defender, as distinct from any defendant, regarding the appointment as standby counsel at the request of the Commonwealth, the adjudication of the appeal could presumably result in the loss of the prosecution. Thus, it does not appear that trial could be delayed while an appeal of the issue was being pursued without the potential of a hampered prosecution and, if, conversely, the trial was conducted, we would face the same mootness argument made herein. Thus, we conclude that the issue is one that is capable of repetition, yet likely to evade review.

Majority op. 586 Pa. at 326, 893 A.2d at 1280 (footnote omitted). The Majority concludes that, in light of the constitutional speedy trial concerns it perceives *sua sponte,* "the only jurisprudentially sound way" that this sort of issue could be reviewed is in the context of a Writ of Prohibition. *Id.* 586 Pa. at 326, 893 A.2d 1280.[1]

The Majority misconstrues Rule 600 in two respects. First, with all due respect, the Majority is mistaken in suggesting that Rule 600 concerns necessarily implicate a defendant's constitutional speedy trial rights.

Rule 1100 was adopted by this Court on June 8, 1973 in an attempt to give "practical effect to the United States Supreme Court's observation that state courts could, pursuant to their supervisory powers, establish 'fixed time period[s] within which cases must normally be brought.'" *Commonwealth v. Hamilton,* 449 Pa. 297, 302, 297 A.2d 127, 130 (1972) (quoting *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972)). The United States Supreme Court has, however, continued to eschew the rigidity of such an approach to the Sixth Amendment's right to a speedy trial, preferring instead a totality of the circumstances review. *U.S. v. MacDonald,* 435 U.S. 850, 98 S.Ct. 1547, 56 L.Ed.2d 18 (1978); *Moore v. Arizona,* 414 U.S. 25, 94 S.Ct. 188, 38 L.Ed.2d 183 (1973). As we noted in [*Commonwealth v.*] *Crowley,* [502 Pa. 393, 466 A.2d 1009, 1012 n. 5 (1983)]:

> In *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the United States Supreme Court held that it is impossible to determine with precision when a state has denied a defendant's Sixth Amendment right to a speedy trial. The *Barker* Court identified four factors to be considered in determining a Sixth Amendment speedy trial violation: (1) length of delay; (2)

---

1. The Public Defender does not argue that the AOPC's argument respecting mootness fails because of Rule 600; instead, the Majority invokes Rule 600 without the benefit of briefing from either party. That the Majority's analysis of the effect of Rule 600 plainly is erroneous illustrates the danger inherent in such *sua sponte* endeavors.

reason for delay; (3) defendant's assertion of his rights; and (4) prejudice to the defendant.

*Commonwealth v. Terfinko,* 504 Pa. 385, 474 A.2d 275, 278–79 (1984).[2,3]   *Accord Crowley,* 466 A.2d at 1012 ("We adopted Rule 1100 pursuant to our supervisory powers to reduce the backlog of criminal cases in Common Pleas and to provide an objective standard for protection of [a] defendant's speedy trial rights.") (citing cases).   A violation of Rule 600 simply does not establish *per se* a constitutional violation; for example, the windfall of a discharge may result from a technical violation of Rule 600 in the absence of any demonstrable prejudice, and thus, notwithstanding any constitutional implications.

The more important error in the Majority's reading, however, consists in its assumption that any collateral or permissive appeal pursued by the Public Defender in its capacity as court-appointed standby counsel, which might occasion a delay in the defendant's trial beyond Rule 600's technical run date, would warrant a Rule 600 windfall in the form of a discharge or, as the Majority calls it, "loss of the prosecution."   Majority op. 586 Pa. at 326, 893 A.2d at 1280.   As this Court observed in *Crowley,* 466 A.2d at 1012, "[t]he administrative mandate of Rule 1100 [now Rule 600] certainly was not designed to insulate the criminally accused from good faith prosecution delayed through no fault of the Commonwealth."   Consistently with *Crowley's* observation, the plain language of Rule 600(G), which the Majority does not discuss, makes clear that a discharge is not available unless the delay could have been avoided by the Commonwealth through the exercise of due diligence.   Rule 600(G) reads:

**2.**   Former Criminal Rule 1100 was renumbered Rule 600 in March 2000. Pa.R.Crim.P. 600, Note.

**3.**   The *Hamilton* Court discussed the practical difficulties inherent in the constitutional standard, examined the benefits of adopting a supervisory rule which would fix certain time limits for bringing cases to trial, and referred the matter to the Criminal Procedural Rules Committee to consider such a rule.   The result of the referral was the adoption of what is now Rule 600.

(G) For defendants on bail after the expiration of 365 days, at any time before trial, the defendant or the defendant's attorney may apply to the court for an order dismissing the charges with prejudice on the ground that this rule has been violated.

\* \* \*

If the court, upon hearing, shall determine that the Commonwealth exercised due diligence and that the circumstances occasioning the postponement were beyond the control of the Commonwealth, the motion to dismiss shall be denied and the case shall be listed for trial on a date certain.

Pa.R.Crim.P. 600(G).

In a situation like the instant one, the defendant's court-appointed standby counsel, not the Commonwealth, is the party seeking interlocutory or certified review. To the extent that such review would occasion a delay in the commencement of trial, that defense delay is a circumstance beyond the control of the Commonwealth, which accordingly does not implicate the Commonwealth's due diligence. Because this scenario, if repeated, would not implicate Rule 600, the Majority's holding that the "capable of repetition yet evading review" exception to the mootness doctrine applies is clearly erroneous in my opinion.

Even aside from the disqualifying mootness issue, it is readily apparent that a Writ of Prohibition should not be deemed available to review a challenge to a pretrial order appointing standby counsel in a criminal case. The Majority inexplicably dismisses the AOPC's foundational argument on this point without ever discussing the nature and purpose of this extraordinary Writ. *See Capital Cities Media, Inc. v. Toole*, 506 Pa. 12, 483 A.2d 1339, 1341 (1984) (consideration of nature and purpose of Writ of Prohibition is essential in discussing its propriety). Similarly, the Public Defender never discusses what is required under the Writ of Prohibition. The classic expression of the nature and purpose of the Writ is found in Mr. Justice (later Chief Justice) Horace Stern's

opinion for the Court in *Carpentertown Coal & Coke Co. v. Laird,* 360 Pa. 94, 61 A.2d 426 (1948):

> Prohibition is a common law writ of extremely ancient origin[.] ... Its principal purpose is to prevent an inferior judicial tribunal from assuming a jurisdiction with which it is not legally vested in cases where damage and injustice would otherwise be likely to follow from such action. It does not seek relief from any alleged wrong threatened by an adverse party; indeed it is not a proceeding between private litigants at all but solely between two courts, a superior an[d] an inferior, being the means by which the former exercises superintendance [sic] over the latter and keeps it within the limits of its rightful powers and jurisdiction.
>
>    \* \* \*
>
> The writ of prohibition is one which, like all other prerogative writs, is to be used only with great caution and forebearance and as an extraordinary remedy in cases of extreme necessity to secure order and regularity in judicial proceedings if none of the ordinary remedies provided by law is applicable or adequate to afford relief. It is a writ which is not of absolute right but rests largely in the sound discretion of the court. It will never be granted where there is a complete and effective remedy by appeal, certiorari, writ of error, injunction, or otherwise....

*Id.* at 428, 430.[4] This Court has extended the classic scope of the Writ "to encompass situations in which an inferior court, which has jurisdiction, exceeds its authority in adjudicating the case. This latter situation has been termed an 'abuse of jurisdiction.'" *Capital Cities,* 483 A.2d at 1342. *Accord Commonwealth v. Vartan,* 557 Pa. 390, 733 A.2d 1258, 1262–63 (1999). The *Capital Cities* case thus summarized the governing test for the Writ as follows:

> The criteria for granting a writ of prohibition are satisfied by meeting a two-pronged test derived from the language of *Carpentertown Coal, supra.* ... First, it must be estab-

---

4. This Court's common law power to issue the Writ has since been recognized in the Judicial Code. 42 Pa.C.S. § 721(2).

lished that there is no adequate remedy at law to afford relief; second, there must be extreme necessity for the relief requested to secure order and regularity in judicial proceedings....

Thus, the writ of prohibition under Pennsylvania law is an extraordinary remedy invoked to restrain courts and quasi-judicial bodies from usurping jurisdiction which they do not possess or exceeding the established limits in the exercise of their jurisdiction. The writ is not one of right but rather rests with the sound discretion of the appellate court. A writ will issue only upon a showing of extreme necessity and the absence of any available remedy at law. Where relief may be sought through ordinary avenues of judicial review, the writ will not lie.

483 A.2d at 1342–43 (citations omitted).

This run-of-the-mill court appointment dispute, which the Majority takes pains to emphasize turns upon its "unique," "narrow" facts, does not implicate the concerns that would warrant resort to the extraordinary Writ. Indeed, resort to the Writ is inappropriate under both prongs of the *Carpentertown Coal* test: (1) as I have noted in discussing mootness, other appellate remedies exist in the ordinary course; and (2) the abuse of lower court jurisdiction which creates the "extreme necessity" to issue the Writ is not remotely implicated. Indeed, as to the second prong, the Public Defender does not argue that the trial court in this case lacked jurisdiction, or "usurped" its established authority, in issuing its appointment order. To the contrary, the Defender candidly admits that its appointment in this case was fully authorized by this Court's Rules of Criminal Procedure. Rather than challenging jurisdiction, the gravamen of the Public Defender's complaint is merely that the trial court's Rules-based discretionary appointment authority "clash[es] with the discretion granted the Public Defender" under the Public Defender Act. The Public Defender then notes that there is a dearth of appellate case law interpreting the Public Defender's authority and that is why it has sought extraordinary review here.

I do not doubt the seriousness of the issue for purposes of the Public Defender seeking to understand the line between its authority and that of the court. However, this is not an extraordinary circumstance calling for a Writ of Prohibition. The Public Defender's own pleadings make clear that it believes that the court acted in accordance with the Criminal Rules; its dispute is with the Rules themselves, which it believes are in conflict with the discretionary prerogatives reserved under the Public Defender Act. The Writ does not exist so that anytime a party wants to "prohibit" a trial judge from doing something, this Court will step in and remonstrate that judge. Rather, it exists for genuine instances of abuse affecting so fundamental a matter as the lower court's jurisdiction or power. Here, the Public Defender never acknowledges the controlling, high standard, much less does it try to satisfy the standard. The AOPC is absolutely correct that this is not an instance implicating the Writ of Prohibition.

Moreover, even if the Writ could be tortured to extend to this sort of dispute as a general matter, this case does not merit review because the "clash" in authority the Public Defender perceives is illusory. As the AOPC again correctly notes, the Rules themselves resolve the purported conflict. Criminal Rule 1101, which governs "Suspension of Acts of Assembly," specifically and unambiguously provides that the Public Defender Act is suspended "insofar as the Act is inconsistent with Rule 122." It is Rule 122, of course, which authorizes the trial courts to appoint counsel, irrespective of indigency or other concerns, when "the interests of justice so require."

In a system of scarce judicial resources, any case taken out of order and reviewed in "extraordinary" fashion forces the cases of other litigants, who have proceeded in the ordinary course, to the backburner. To ensure a rational and fair system of access to appellate justice, those who seek extraordinary treatment must be held to the standards which govern the manner of review they invoke. At a minimum, the petitioner (and this Court) should indicate a familiarity with the standard. In this case, because the Public Defender's plead-

ings establish no factual or legal predicate for issuing the Writ, we should simply dismiss the Petition without reaching the merits. The Majority's determination otherwise will only serve to encourage future abuses of the Writ and to clutter this Court's already-overburdened docket to the detriment of other litigants.

## II. THE MERITS

Although I would not reach the merits, since the Majority does so, and in a fashion with which I respectfully disagree, I offer my dissenting view. I have several concerns with the Majority's approval of the trial court's drafting of the Public Defender as taxpayer-financed standby counsel for a financially ineligible criminal defendant. First, the Majority does not make clear the governing standard of review. Second, the Majority's ultimate approval of the appointment order is based upon a finding that it was an "entirely appropriate" decision reflecting "an eminently reasonable compromise" given the "unique" and "narrow" facts here. Majority op. 586 Pa. at 327–29, 893 A.2d at 1281–82. In my view, there was no "compromise" attempted or achieved here; instead, the trial court candidly admitted that it *always* appoints standby counsel in cases where the defendant is proceeding *pro se* and it saw no reason to distinguish between the Public Defender and private counsel in following its fixed approach. Third, because the Majority fails to enunciate the proper review standard and the actual basis for the trial court's decision, it fails to address a more difficult and important issue concerning the proper interpretation of this Court's Rules, which appear to authorize—but certainly do not require—the appointment of taxpayer-financed standby counsel to *non-indigent* criminal defendants in certain cases.

The relevant facts are straightforward. The trial court made clear in its opinion that it did not dispute the Public Defender's assessment that defendant Bettelli was financially ineligible for the Defender's services, or indeed for appointment of any taxpayer-financed counsel. The court realized that Bettelli was gainfully employed as an over-the-road truck

driver, and that Bettelli had been dilatory in retaining the services of counsel. Trial ct. slip op. at 6. Moreover, Bettelli had validly waived his right to counsel and was prepared to proceed *pro se*—as was his constitutional right; *see Commonwealth v. Starr*, 541 Pa. 564, 664 A.2d 1326, 1334 (1995) ("A criminal defendant has a long-recognized constitutional right to dispense with counsel and to defend himself before the court."); *Faretta v. California*, 422 U.S. 806, 821, 95 S.Ct. 2525, 2534, 45 L.Ed.2d 562, (1975) (right of criminally accused to conduct his own defense is implicit in Sixth Amendment)—if he were unable (or, as apparent in this case, unwilling) to retain the services of counsel. The trial court decided to test Bettelli's dilatoriness by (in the court's words) "forc[ing] the defendant to trial" in the hopes that the prospect of an imminent and unavoidable trial date would convince him to hire counsel. That hope did not pan out, however, and as the trial approached, the court elected not to grant further continuances to the defense. Instead, the court ordered the matter to trial with Bettelli representing himself and the Public Defender appointed, ten days before trial, as free standby counsel.

In its opinion, the trial court made it perfectly clear that it appointed the Public Defender in this case not because it was "balancing" any competing interests it perceived, but rather because that was the court's practice in *all* cases where the defendant elected to proceed *pro se:* "this judge, in every case where a defendant is representing himself *pro se*, has always appointed standby counsel." Trial ct. slip op. at 4–5.[5] The

5. The trial court noted that it was aware that the Commonwealth requested the appointment of standby counsel because of a concern specific to the case, *i.e.*, the prospect of Bettelli, acting *pro se*, questioning the child victim. However, the court made clear that it did not appoint standby counsel because of this concern, but rather because it was the court's practice to do so in all cases of self-representation. It should be noted that the Commonwealth's apparent belief that a defendant exercising his constitutional right to self-representation could be forced to allow standby counsel to conduct an examination is mistaken—at least absent disruption or some other concern sufficient to override the defendant's constitutional right of self-representation. *See McKaskle v. Wiggins*, 465 U.S. 168, 178, 104 S.Ct. 944, 951, 79 L.Ed.2d

court explained that it viewed this blanket approach as author-
ized by Criminal Rule 122(C), which permits the trial court to
assign counsel to the defendant on its own motion "whenever
the interests of justice require it," without any requirement of
indigency[6] and Rule 121(D), which provides that, in cases
where the defendant's waiver of counsel is accepted, "standby
counsel may be appointed by the court." The court also noted
that, in this case, the seriousness of the charges warranted
application of its blanket approach. Having explained why it
believed appointment of taxpayer-financed standby counsel
was appropriate, the court then explained why it appointed the
Public Defender rather than private counsel. In the court's
view, the Public Defender stood on the same footing "as any
other (criminal) lawyer," and "the convenience of the court in
this case" outweighed the Public Defender's interest in not
devoting its limited resources to representation of a financially
ineligible defendant. *Id.* at 5–6.

Turning first to the standard of review question, since the
court relied upon Rules 121 and 122, those Rules are the
proper starting point. Rule 121 permits, but does not require,
the appointment of standby counsel in cases, such as this one,
where the defendant has waived his right to counsel. The
Rule is silent on the question of indigency; thus, it draws no
distinction between those *pro se* defendants who are indigent
and those who can afford to retain counsel, nor does it suggest
a manner of recouping public moneys in a case where standby
counsel is appointed for the benefit of a defendant who is
financially able to retain his own lawyer. The Comment to the
Rule, which is not binding,[7] states that, at least in court (*i.e.*,
non-summary) cases "it is generally advisable that standby

122 (1984). Thus, the reason proffered by the Commonwealth would
not warrant appointing standby counsel.

**6.** Rule 122 was later amended on April 28, 2005, with an effective date
of August 1, 2005.

**7.** Although useful tools for interpretation, the Comments to the Rules
have not been officially adopted by this Court; thus, this Court is not
bound by the Comments. *See Commonwealth v. Lockridge,* 570 Pa. 510,
810 A.2d 1191, 1196 (2002); *Commonwealth v. Martin,* 479 Pa. 609,
388 A.2d 1361, 1363 (1978); *Steinert v. Galasso,* 363 Pa. 393, 69 A.2d
841, 844 (1950).

counsel be appointed to attend the proceedings and be available to the defendant for consultation and advise." Pa. R.Crim.P. 121, Comment. The Comment then cites with approval to a case where the *pro se* defendant was disruptive, *see Commonwealth v. Africa,* 466 Pa. 603, 353 A.2d 855, 864 (1976), and also notes that long or complicated trials, or trials involving multiple defendants, are instances where appointing standby counsel is advisable. Pa.R.Crim.P. 121, Comment.

Rule 122 is the general appointment rule. Rule 122 permits the appointment of counsel, in court cases, only for qualifying defendants "who are without financial resources or who are otherwise unable to employ counsel." However, the Rule provides for exceptional circumstances *requiring* the court, on its own motion, to appoint counsel to represent a defendant "whenever the interests of justice require it." Thus, the "interests of justice" exception, like the standby counsel rule, does not qualify the power by tying it to the defendant's financial status. Moreover, the Comment to Rule 122 makes clear that the broadness of this appointment power is intentional, as it states that this provision "retains in the issuing authority or judge the power to assign counsel regardless of indigency or other factors when, in the issuing authority or judge's opinion, the interests of justice require it." Pa. R.Crim.P. 122, Comment.

With respect to standby counsel, since the court is merely authorized to appoint counsel, but is not required to do so, Rule 121 must be construed as conferring a discretionary power upon the trial judge. Similarly, the Rule 122(C) appointment power must be construed as discretionary. Although the Rule is written in mandatory terms, the mandate is triggered only when the "interests of justice" so dictate. The question of whether the interests of justice in fact so dictate, of course, must be a matter of discretion. Accordingly, I would hold that this Court's review of the appointment below is confined to determining whether the trial court abused its discretion.

The trial court's candid explanation of the reasons it appointed the Public Defender does not reflect an exercise of

discretion but a rote application of a hard-and fast rule; it *always* appoints standby counsel to defendants who represent themselves. It is not an exercise of discretion to do the same thing in all cases, irrespective of differing factual and legal considerations. Contrary to the Majority's view, such a regimen does not reflect any sort of "reasonable compromise" of competing interests. Moreover, the unilateral practice was justified, in the face of a claim that it overrode the Public Defender's own discretionary authority, on grounds that "the court's convenience" was paramount. This is not a consideration recognized by, or even suggested by, Rules 121 and 122. To the extent the Majority suggests that the ruling here was proper because it was an exercise in balanced decision-making, it does not withstand a record-based review.

The more difficult question—one which the Majority's disposition avoids—is whether the trial court's hard-and-fast rule, which it applied to the Public Defender in the circumstances here, may be deemed a proper exercise of its discretion under the Rules, notwithstanding its inflexibility. Put another way: is it proper for a trial court *always* to appoint standby counsel, even in a case where the defendant validly waived his right to counsel, is ineligible for taxpayer-assisted counsel, and where the appointment is objected to by the Public Defender, who has thereby been forced to divert time and resources away from those who are financially eligible for its services?

I would hold that the trial court abused its discretion. This author, having personally tried a number of cases against self-represented defendants, is well aware of the convenience to the court (and the prosecution) of reining in that election by having standby counsel made available. But the interests of justice dictate that there is more to be considered than convenience. Even in the case of an indigent defendant, who is entitled to taxpayer-provided counsel, once that defendant has validly waived the right to counsel, there is no constitutional entitlement to standby assistance. As a constitutional matter, the defendant may choose counsel, or he may choose to represent himself. He is not entitled to both choices, and

when he chooses self-representation, he should be prepared for the solitary consequences.

On the other hand, there may be circumstances attending a particular case where the appointment of standby counsel is advisable to vindicate concerns *other than* the defendant's right to counsel. The cases involving potentially disruptive defendants provide the best example; obviously, a defendant should not be permitted to employ his right of self-representation in a fashion which makes a mockery of the trial, or ensures the waste and expense of a mistrial. *See Mayberry v. Pennsylvania,* 400 U.S. 455, 91 S.Ct. 499, 27 L.Ed.2d 532 (1971) (Burger, C.J., concurring); *Commonwealth v. Abu-Jamal,* 553 Pa. 485, 720 A.2d 79 (1998); *Commonwealth v. Africa,* 466 Pa. 603, 353 A.2d 855 (1976). Appointment of counsel in that instance may help to forestall a greater, planned injustice. The unique stakes involved in capital cases may also counsel in favor of a blanket rule requiring standby counsel, whether the defendant is indigent or not. *See Commonwealth v. Szuchon,* 506 Pa. 228, 484 A.2d 1365, 1376–77 (1984). Moreover, at least where it is an indigent defendant, appointment of taxpayer-financed standby counsel in complex cases, cases where the trial is expected to be lengthy, or cases where there is some indication that the defendant, though competent, is mentally unstable, may further the interests of justice, and with no harm to countervailing interests of the defendant or society, which could be expected to bear the expense of a change in circumstances affecting an indigent defendant.[8]

At least in non-capital cases, I would hold that the calculus cannot be the same in an instance where the defendant who

8. In *Faretta,* the U.S. Supreme Court noted that:

the trial judge may terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct. *See Illinois v. Allen,* 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353. Of course, a State may—even over objection by the accused—appoint a "standby counsel" to aid the accused if and when the accused requests help, and to be available to represent the accused in the event that termination of the defendant's self-representation is necessary.

422 U.S. at 834 n. 46, 95 S.Ct. at 2525, 2541 n. 46.

has waived his right to counsel is not constitutionally entitled to taxpayer-financed counsel. In that instance, the taxpayers should not so cavalierly be expected to foot the bill for the lawyer the defendant has elected not to hire. In my view, in the case of a defendant who can afford counsel, but has elected not to retain counsel, taxpayer-financed standby assistance should be available only where the defendant has refused to hire standby counsel himself, and there is some specific reason to believe that the failure to appoint standby counsel may cause a greater public financial calamity (such as a mistrial or other significant waste of time and/or resources). In short, the appointment in that instance should exist only to further the public interest, and not the whim or caprice of the defendant. At a minimum, if counsel is to be appointed for a non-indigent defendant at public expense, some mechanism should be put in place to recoup the costs of the appointment.[9]

Although the relevant Rules as written do not draw an affirmative distinction between indigent and non-indigent defendants, the discretionary flexibility built into the Rules required the trial court to give more careful consideration to the distinction once the Public Defender plainly identified it. It is not a sufficient answer in the face of that argument to say: "we always appoint standby counsel, even to non-indigent defendants who waive counsel." In my view, that answer was clearly an abuse of discretion. Moreover, there was nothing in the circumstances of this case to suggest that an appointment of standby counsel was necessary to protect the public interest—*e.g.*, there was no suggestion that Bettelli would seek to disrupt the proceedings or try to force a mistrial. The taxpayers should not be expected to bear the expense of an

9. The difficulty in recouping the costs is that the defendant has a constitutional right to represent himself and, such being the case, he should not be charged for an appointment (even a standby appointment) foisted upon him against his will—at least in the absence of some indication that the threat of disruption on his part clearly warrants the appointment. *See* Anne Bowen Poulin, *The Role of Standby Counsel in Criminal Cases: In the Twilight Zone of the Criminal Justice System*, 75 N.Y.U. L.Rev. 676, 699 (2000) ("A pro se defendant who objects to the appointment of standby counsel should not be required to pay for the service of the attorney").

appointment of standby counsel for this defendant, who was financially able to secure his own counsel, but who elected not to (whether out of parsimony, ill judgment, a fervent desire to represent himself, or obstreperousness), and who affirmatively waived his right to counsel and elected to proceed *pro se.*

Although I am fully comfortable with the interpretation and application of Rules 121 and 122 as I have articulated it above, I believe that a referral of the matter to the Criminal Procedural Rules Committee is appropriate to consider changes to Rules 121 and 122 which would more directly address the best way to balance the concerns where a non-indigent defendant waives his right to counsel. Indeed, there are complexities in the area of standby counsel, well illustrated in a law review article by Professor Anne Poulin. *See* Poulin, *supra* note 9.

### III. CONCLUSION

I would summarily dismiss the Petition for a Writ of Prohibition. Failing that, the advisory opinion I would issue would disapprove the lower court's appointment order. In either event, I would refer this matter to the Criminal Procedural Rules Committee. Hence, I respectfully dissent.

Justice NEWMAN, dissenting.

I respectfully dissent from the Majority Opinion because I believe that the Petition of the Public Defender's Office (Office) should be dismissed as moot rather than denied on its merits. Consequently, I offer no opinion as to the Majority's holding that the Court of Common Pleas of Venango County was vested with the discretionary authority to appoint a public defender to serve as standby counsel for a *pro se* criminal defendant whom the Office had previously determined to be financially ineligible for its services.

Before proceeding to the mootness question, I first note my agreement with the Majority's determination that this Court has jurisdiction to consider the Office's Petition. Originally, a writ of prohibition was intended primarily "to prevent an inferior judicial tribunal from assuming a jurisdiction with

which it is not legally vested." *Carpentertown Coal & Coke Co. v. Laird,* 360 Pa. 94, 61 A.2d 426, 428 (1948). "In addition to total absence of jurisdiction, our cases have extended ... the writ ... to encompass situations in which an inferior court, which has jurisdiction, exceeds its authority in adjudicating the case. This latter situation has been termed an 'abuse of jurisdiction.'" *Capital Cities Media, Inc. v. Toole,* 506 Pa. 12, 483 A.2d 1339, 1342 (1984) (collecting cases); *see also Glen Mills Schs. v. Court of Common Pleas of Phila. County,* 513 Pa. 310, 520 A.2d 1379, 1381 (1987) ("Beyond the situation where the lower court wholly lacks jurisdiction in a matter, a writ of prohibition is proper where the inferior tribunal abuses its jurisdiction.").

In addition to the power to decide a case, the term "jurisdiction" refers to a court's authority to "issue a decree." *Black's Law Dictionary* 855 (17th ed. 1999). The word "decree," in turn, means "[a]ny court order." *Id.* at 419. Therefore, a petition alleging that a lower court has abused its authority to issue an order comes within this Court's jurisdiction to grant a writ of prohibition. The Public Defender's Office presently challenges the authority of the Court of Common Pleas of Venango County to order, pursuant to Pennsylvania Rule of Criminal Procedure 121,[1] that an attorney from the Office act as standby counsel. Thus, I agree with the Majority that this Court has the power to grant the Petition of the Office.

Whether this Court actually should exercise that power in the instant case, however, is a different question. To determine this, we would turn to "[t]he [two] criteria for **granting** a writ of prohibition," which this Court established in *Capital Cities. See Capital Cities,* 483 A.2d at 1342–43 (emphasis added). In his Dissenting Opinion, however, Justice Castille notes that he would apply this test to determine whether this is "an instance **implicating** the Writ of Prohibition." (*See* Dissenting Op. 586 Pa. at 337, 893 A.2d at 1287 (emphasis added); *see also id.* at 337, 893 A.2d at 1287 (suggesting, after applying the test, that the Petition should be dismissed without reaching its merits)). Nevertheless, merely by challeng-

---

1. Pa.R.Crim.P. 121(D).

ing the authority of the trial court to order that a public defender serve as standby counsel, the Public Defender's Office has presented an issue that comes within the scope of the Writ.

Although I agree with the Majority that this Court has the power to grant a writ of prohibition in this matter, I believe that the mootness doctrine prevents us from reaching the merits of the Office's Petition.[2] I disagree with the Majority's conclusion that this case is capable of repetition yet likely to evade review, and I join in that portion of Part I of the Dissenting Opinion in which Justice Castille explains why that exception is presently inapplicable. I find particularly persuasive the plain language of Rule 600,[3] pursuant to which a motion to discharge the defendant must be denied if the Commonwealth can show that it exercised due diligence and that the circumstances occasioning the delay of trial were beyond its control. As Justice Castille notes, if a case such as the one *sub judice* came to this Court as an interlocutory or certified appeal rather than a petition for a writ of prohibition, it would still be the Public Defender's Office rather than the Commonwealth whose actions resulted in the postponement of trial. In light of these alternative avenues of appeal, the instant case is not likely to evade review and therefore must be considered moot.

As the Majority acknowledges, judicial avoidance of moot questions is "axiomatic." (*See* Majority Op. 586 Pa. at 324, 893 A.2d at 1279); *see also Pap's A.M. v. City of Erie,* 571 Pa. 375, 812 A.2d 591, 599 (2002); *Rogers v. Lewis,* 540 Pa. 299, 656 A.2d 1368 (1995) (dismissing moot appeal); *In re Gross,* 476 Pa. 203, 382 A.2d 116 (1978) (declining to reach merits of issue after deeming it moot). Therefore, because the issue *sub judice* is now moot, it would be inappropriate to consider the merits of the Petition.

---

**2.** As the Majority acknowledges, in the absence of an applicable exception to the doctrine, the issue before us is now moot because a public defender from the Office already has served as standby counsel at Bettelli's trial. (*See* Majority Op. 586 Pa. at 324, 893 A.2d at 1279).

**3.** Pa.R.Crim.P. 600(G).

Accordingly, I would dismiss the Office's Petition for a Writ of Prohibition as moot. I dissent from the Majority's decision to deny the Petition on its merits, and I offer no opinion as to the authority of the Venango County Court of Common Pleas to appoint a public defender as standby counsel under the circumstances of this case.