**KEYSTONE REDEVELOPMENT PARTNERS, LLC, Petitioner**

v.

**PENNSYLVANIA GAMING CONTROL BOARD and Philadelphia Entertainment and Development Partners, LP., Respondents.**

Commonwealth Court of Pennsylvania.

Argued May 18, 2010.

Decided Sept. 16, 2010.

John P. Krill, Jr., Harrisburg, for petitioner.

R. Douglas Sherman, Chief Counsel, Harrisburg, for respondent, The Pennsylvania Gaming Control Board.

Robert A. Graci, Harrisburg, for respondent, Philadelphia Entertainment and Development Partners, L.P.

BEFORE: SIMPSON, Judge, McCULLOUGH, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Judge SIMPSON.

We consider an issue of first impression: under what circumstances may a person who did not appeal the denial of its application for a gaming license become involved in subsequent administrative proceedings of a licensee. We hold that under the Pennsylvania Race Horse Development and Gaming Act (Act),[1] the

---

1. 4 Pa.C.S. §§ 1101–1904.

circumstances for such a person to become involved are limited and involvement is subject to the discretion of the Pennsylvania Gaming Control Board (PGCB or Board).

In these consolidated appeals, Keystone Redevelopment Partners, LLC (Keystone), an unsuccessful applicant for one of the two Philadelphia (City) Category 2 slot machine licenses awarded in December, 2006, petitions for review from three orders of the Board. The first order granted current licensee Philadelphia Entertainment and Development Partners, LP's (Licensee) petition to extend time to make slot machines available (extension petition). The second order denied Keystone's petition to intervene in Licensee's extension proceeding. The third order denied Keystone's petition to re-open its and Licensee's initial licensing proceedings. For the reasons that follow, we quash Keystone's appeal to the extent it seeks review of the Board's extension order. Otherwise, we affirm.

## I. Background

### A. License Award

In December, 2005, following the enactment of the Act, the Board received five applications for the two Category 2 slot machine licenses[2] available in the City. Licensee sought to build Foxwoods Philadelphia, a casino complex located at 1449 South Columbus Boulevard between Reed and Tasker Streets, on the south Philadelphia waterfront. Keystone sought to build the Trump Street Casino in north Philadelphia near the intersection of Fox Street and Roberts Avenue. HSP Gaming LP (HSP), Riverwalk Casino (Riverwalk), and PNK–Pinnacle Entertainment (Pinnacle) sought licenses for riverfront casinos on North Delaware Avenue. At its December, 2006, public meeting, the Board voted to award the licenses for two riverfront locations: HSP's SugarHouse on North Delaware Avenue, and Licensee's Foxwoods on Columbus Boulevard. In February, 2007, the Board memorialized its award in a written decision. *See* PGCB Licensing Dec., 02/01/07; Reproduced Record (R.R.) at 61a–175a. In its decision, the Board noted, "[t]hose applicants not awarded a license have, under the mandates of the Act, been denied a license."[3] *Id.* at 7; R.R. at 69a. *See also id.* at 113; R.R. at 175a (same). Significant for our disposition, Keystone did not appeal the Board's denial of its application.

### B. Events Following License Award

In January, 2007, following the license award, Licensee submitted the requisite zoning and use registration permit applications to the City. However, Licensee encountered numerous obstacles in its attempt to construct its facility at the Columbus Boulevard site. First, in March, 2007, Riverwalk, one of the three unsuccessful applicants, appealed the Board's licensing decision. In July, 2007, the Su-

---

**2.** A Category 2 slot machine license authorizes the placement and operation of slot machines in a stand-alone facility. 4 Pa.C.S. § 1304; *Riverwalk Casino, L.P., v. Pa. Gaming Control Bd.,* 592 Pa. 505, 926 A.2d 926 (2007). As to Category 2 licenses, the Act authorizes the Board to award two facilities in a city of the first class, one facility in a city of the second class, and two facilities in revenue—or tourism—enhanced locations. *Id.*

**3.** "Except for conditional Category 1 license applications ... *it is mandatory that the [B]oard shall consider, approve, condition or deny the approval of all initial applications* for each and every category of slot machine licenses collectively and together, in a comprehensive Statewide manner, *within 12 months following the time set by the [B]oard at which all applications are to be filed and deemed complete by the [B]oard."* 4 Pa.C.S. § 1301 (emphasis added).

preme Court denied Riverwalk's appeal and affirmed the Board's decision approving licenses for HSP and Licensee. *Riverwalk Casino, L.P., v. Pa. Gaming Control Bd.*, 592 Pa. 505, 926 A.2d 926 (2007).

Thereafter, in response to numerous and varied delays by local and municipal entities, Licensee filed several emergency petitions for review with the Supreme Court. In April, 2008, the Supreme Court granted Licensee's emergency petition directing the City to approve the necessary zoning for the Columbus Boulevard site. In early May, 2008, Licensee submitted a zoning and use permit application to the City. However, the City took no action on Licensee's zoning application.

On May 29, 2008, the Board issued Licensee its Category 2 slot machine license. Pursuant to Section 1210(a) of the Act (number of slot machines; initial complement), Licensee had one year from this date to commence operations by making a minimum of 1,500 slot machines available for play. 4 Pa.C.S. § 1210(a).

In July, 2008, Licensee filed a petition with the Supreme Court seeking appointment of a Special Master and enforcement of the Court's April, 2008, order directing the City to approve the necessary zoning for the Columbus Boulevard site. In October, 2008, the Supreme Court appointed Commonwealth Court Senior Judge Joseph F. McCloskey as Special Master. The Supreme Court also granted Licensee's request for enforcement of its April, 2008, order.

Meanwhile, in August, 2008, at Governor Edward G. Rendell's request, Licensee began meeting with state and local government officials regarding the possibility of moving its facility from the Columbus Boulevard site to a Center City site.[4] In September, 2008, Licensee and officials initially discussed a possible relocation to the Gallery Complex at 11th and Market Streets. In early 2009, Licensee began considering relocation in the former Strawbridge Building at 801 Market Street. In April, 2009, Licensee appeared at a public meeting of the Board to provide a project update. At that time, Licensee confirmed it anticipated filing for permission to relocate to the Strawbridge site.

### C. Keystone's Petition to Re–Open

In January, 2009, Keystone filed a petition to re-open both its and Licensee's initial licensing proceedings, and for related relief. Keystone alleged Licensee, by considering other locations, abandoned its Columbus Boulevard site, which was a substantial factor in the Board's grant of the license; therefore, the Board should declare Licensee's license forfeited or abandoned. Keystone further requested the Board award it the license because it is the only remaining eligible and suitable applicant. Keystone averred Pinnacle and Riverwalk both sought North Delaware Avenue locations, and the Board previously decided to award only one North Delaware Avenue license, which went to HSP's SugarHouse.

In response, the Board's Bureau of Investigations and Enforcement (BIE) filed

---

**4.** The prior version of Section 1329 of the Act, 4 Pa.C.S. § 1329 (nonportability of a slot machine license), in effect at all relevant times here, provided: "Each slot machine license shall only be valid for the specific physical location within the municipality and county for which it was originally granted. No slot machine licensee shall be permitted to move or relocate the physical location of the li-

censed facility without board approval." The Act of January 7, 2010, P.L. 1, amended Section 1329 and re-titled it: "Portability and relocation of slot machine license." The 2010 amendment deleted the general prohibition on relocation of slot machine facilities and provided for Board-approved relocation within the same county subject to certain conditions. *See* 4 Pa.C.S. § 1329.

an answer and new matter denying Keystone's allegations. In its new matter, BIE averred Keystone lacked standing to file its petition to re-open. First, Board regulations provide that "[p]etitions may be filed by BIE, parties, applicants, licensees, permittees, persons registered or certified by the Board, and other persons authorized by the Board." 58 Pa.Code § 493a.4(a). Keystone does not fall within any of these categories. In addition, BIE averred Keystone lacked standing because it: failed to show it was aggrieved or in any way harmed or affected by any Board decision; failed to intervene or participate in Licensee's or any other applicant's licensing proceeding; failed to appeal the Board's licensing decision denying its application; and, has no authority to request that the Board revoke Licensee's license. BIE further averred only its Office of Enforcement Counsel (OEC) is authorized to initiate license revocation proceedings. BIE also averred Keystone's petition to re-open was premature because Licensee never petitioned for relocation.

In addition, Licensee filed preliminary motions seeking to dismiss Keystone's petition to re-open. Like BIE, Licensee averred Keystone lacked standing and legal authority to re-open the initial licensing proceedings. Licensee averred Keystone, a former unsuccessful applicant, has no greater right than any other person to seek relief from the Board.

### D. Licensee's Extension Petition

On May 22, 2009, seven days before the one-year period to commence operations expired, Licensee filed its extension petition under 4 Pa.C.S. § 1210(a)[5] seeking an additional 24 months to commence casino operations at the Columbus Boulevard site. Licensee averred it faced numerous obstacles beyond its control regarding development of the Columbus Boulevard site, including opposition from Mayor Michael A. Nutter and other City officials as to location, which made it difficult to obtain the necessary zoning permits and approvals. Licensee alleged these facts established good cause for the Board to grant Licensee additional time to open its casino.

In response, BIE filed an answer and new matter averring that Licensee failed to explain why it could not erect a temporary facility within a short period of time, and that Licensee failed to show good cause for an extension. BIE also objected to Licensee's extension request pending a full evidentiary hearing at which Licensee had to present documentation of its applications for all permits needed to begin construction, documentation of all government permits and approvals received, and documentation showing Licensee possesses all necessary funding or guarantees of funding necessary for construction of its project.

### E. Keystone's Petition to Intervene

In June, 2009, Keystone petitioned to intervene in Licensee's extension proceeding and averred as follows. Keystone meets the Board's requirements for intervention set forth in 58 Pa.Code § 493a.12(c) because it has a substantial, direct and immediate interest in Licensee's extension proceeding. Further, no current party to the proceeding will adequately represent Keystone's "unique interests" as shown, for an additional period not to exceed 24 months." *Id.* The Act of January 7, 2010, P.L. 1, amended Section 1210(a) to provide for extensions of up to 36 months from the end of the initial one-year period or December 31, 2012, whichever is later.

---

**5.** Pursuant to the prior version of 4 Pa.C.S. § 1210(a), effective at all relevant times here, Licensee had one year from the issuance of its license to make 1,500 slot machines available for play, "unless otherwise extended by the [B]oard, upon application and for good cause

one of five original applicants for a Category 2 license in the City. In addition, Keystone remains the only person[6] with the current intent and capability to develop a gaming facility in the City, and it appeared before the Board seeking to re-open its licensing proceeding. Further, Keystone is the only person asserting Licensee abandoned or forfeited its license.

Keystone also claimed it may be bound by the Board's decision in the extension proceeding because the Board may expressly or implicitly rule on the issue of whether Licensee abandoned or forfeited its license. In addition, the Board may address factual and legal issues related to Licensee's attempted "bait and switch," which may impact Keystone's interest in securing a Category 2 license in Philadelphia.

In response, both Licensee and BIE filed answers and new matter denying Keystone's material allegations. Additionally, both Licensee and BIE objected to Keystone's petition to intervene on the basis that Keystone failed to allege any facts that would form the basis for the Board to determine that Keystone has a substantial, direct and immediate interest in the extension proceeding.

### F. August, 2009 Hearing

In late August, 2009, the Board held a public hearing on Licensee's extension petition. Licensee's attorneys and corporate officers explained that Licensee remained committed to developing the Columbus Boulevard site and no longer contemplated a move to the Strawbridge site or anywhere else. Licensee further explained it only considered relocation after being repeatedly urged to do so by the Governor and City officials. *Id.* Ultimately, the Board voted to grant Licensee's extension request subject to certain conditions.

Following discussion of Licensee's extension request, the Board considered Keystone's petition to intervene. At oral argument, Keystone asserted it had a substantial, direct and immediate interest in obtaining a Category 2 license in Philadelphia and that the licensing proceedings should be reopened in order for Keystone's proposed Trump Street casino and Licensee's newly proposed "Strawbridge" casino to fairly compete against each other. The Board, however, voted to deny Keystone's intervention request.[7]

### G. Intervention Order

Shortly thereafter, the Board filed a written adjudication and order denying Keystone's petition to intervene in the extension proceeding. The Board determined Keystone failed to establish a substantial, direct and immediate interest in Licensee's extension petition. In particular, the Board rejected Keystone's assertion that if the Board denied Licensee's extension petition, Keystone, as the only other non-North Delaware Avenue applicant found eligible and suitable in December, 2006, would therefore be entitled to a Category 2 license. The Board noted Key-

---

**6.** Under the Act, "person" includes "[a]ny natural person, corporation, foundation, organization, business trust, estate, *limited liability company*, licensed corporation, trust, partnership, limited liability partnership, association or any other form of legal business entity." 4 Pa.C.S. § 1103 (emphasis added).

**7.** Eastern Pennsylvania Citizens Against Gambling, a community organization, also petitioned to intervene in opposition to Licensee's request for an extension. In addition, a group of state legislators petitioned for *amicus curiae* status. The Board denied Eastern's petition on the ground it lacked the requisite substantial, direct and immediate interest needed to obtain standing. However, the Board granted the legislator group's request to participate in the extension proceeding as *amicus curiae*.

stone's assumption of how the Board would act if it denied Licensee's extension request was speculative and far outside the narrow issue of whether Licensee demonstrated "good cause" for an extension.

### H. Extension Order

The same day, the Board also entered an adjudication and order granting Licensee's extension petition. The Board concluded Licensee established good cause under 4 Pa.C.S. § 1210(a) for a 24–month extension, to run from May 29, 2009, to May 29, 2011, to commence operations.[8] The Board's order specified that the extension is limited to the Columbus Boulevard site and that Licensee must develop a facility substantially similar to the one presented in its application materials.[9] The Board emphasized Licensee's license is valid only for the Columbus Boulevard

8. In granting the extension, the Board determined several factors beyond Licensee's control caused its delay in opening the casino. These factors included litigation from an unsuccessful applicant, community groups and legislators, refusal of City Council to rezone the Columbus Boulevard location for commercial entertainment, which resulted in emergency requests to the Supreme Court for zoning relief and appointment of a special master, and the negotiation of a real estate tax settlement with the City. The Board also recognized HSP encountered similar problems and needed a 24–month extension to open SugarHouse on North Delaware Avenue.

9. In addition, the Board's extension order imposed the following conditions:
1. Within 45 days of this Order, [Licensee] shall provide the Board with a written plan to make a minimum of 1,500 slot machines available for play, on or before May 29, 2011, at the Columbus Boulevard site;
2. [Licensee] shall provide [BIE] written monthly updates, beginning October 1, 2009, regarding its efforts to develop a facility with a minimum of 1,500 slot machines available for play, on or before May 29, 2011, at the Columbus Boulevard site;
3. [Licensee] shall provide BIE written monthly updates, beginning October 1, 2009, regarding its efforts and progress to obtain financing for developing a facility with a minimum of 1,500 slot machines available for play, on or before May 29, 2011;
4. Within 6 months of the date of this Order, [Licensee] shall submit to BIE all financing documents and commitments for financing regarding development of its facility with a minimum of 1,500 slot machines available for play, on or before May 29, 2011;
5. Within 3 months of the date of this Order, [Licensee] shall submit to BIE all architectural renderings, artist renderings, conceptual proposals, engineering options, and any and all other documents relating to construction of a facility, substantially similar to that approved by the Board on December 20, 2006. The submissions must provide for a minimum of 1,500 slot machines available for play, on or before May 29, 2011, at the Columbus Boulevard site;
6. Within 3 months of the date of this Order [Licensee] shall submit to BIE a timeline for commencement and completion of all phases of development regarding its facility with a minimum of 1,500 slot machines available for play, on or before May 29, 2011;
7. [Licensee] shall provide BIE with monthly updates, beginning October 1, 2009, regarding the status of all outstanding licenses, certifications, and permits required by all federal, state, county, local or other agency as prerequisites for construction and development of its facility with a minimum of 1,500 slot machines available for play, on or before May 29, 2011, at the Columbus Boulevard site;
8. [Licensee] shall notify the Board prior to or immediately upon becoming aware of any impending change of ownership or change in control, material change in financial status, including debt position, restructuring, receivership, merger, dissolution, bankruptcy or transfer of assets to any third party; and
9. [Licensee] will be required to periodically provide updates as to the status of its project, including, but not limited to, financing, zoning, permits, and certifications, at public meetings, as scheduled by the Board.
Board's Extension Order, 09/01/09, at 1–3.

site, absent further relief from the Board. Although the prior version of 4 Pa.C.S. § 1329 (nonportability of slot machine license), effective at all relevant times here, provided for physical relocation of the licensed facility with Board approval for good cause shown, the Board stressed it would *not* be inclined to approve a material change in site location here because of the competitive nature of the licensing proceedings and the fact it picked the Columbus Boulevard project as one of the two best projects presented.

## I. Denial of Keystone's Petition to Re–Open

Thereafter, in October, 2009, the Board entered an adjudication and order denying Keystone's petition to re-open. The Board concluded Keystone had no substantial, direct and immediate interest in Licensee's license. Nearly three years passed since the Board denied Keystone's application. Therefore, the Board could not find that Keystone or any other 2006 applicant remained eligible and suitable for licensure.

Further, noting the Act vests OEC with the sole legal authority to petition for revocation of a license, 4 Pa.C.S. § 1517(a.2), the Board concluded Keystone lacked standing to seek revocation of Licensee's license. Moreover, the Board recognized Keystone did not appeal the Board's licensing decision awarding Licensee a license; therefore, Keystone waived its right to challenge the license award.

In addition, the Board concluded Keystone's petition to re-open was moot. More specifically, in view of the Board's extension order, Licensee had until May, 2011, to commence operations at the Columbus Boulevard site, and Licensee remained committed to developing that site. Thus, the Board determined no actual case or controversy existed.

## J. Keystone's Appeals

■ Keystone appeals the Board's September, 2009, orders granting Licensee's extension petition and denying Keystone's petition to intervene in the extension proceeding. Keystone also appeals the Board's October, 2009, order denying its petition to re-open the licensing proceedings.[10]

## II. Issues

### A. Intervention Petition

Keystone first contends the Board erred in denying its petition to intervene in Licensee's extension proceeding. Keystone also contends the Board failed to render a valid adjudication addressing Keystone's standing to intervene in Licensee's extension proceeding.

### B. Extension Petition

Keystone also raises four issues regarding the Board's grant of Licensee's extension petition. First, Keystone contends the Board erred in granting an extension of time to construct its casino because Licensee lacks good cause for an extension under 4 Pa.C.S. § 1210(a). Second, Keystone contends the Board erred, abused its discretion and denied it due process in granting Licensee an extension of time to construct a casino without first adjudicating whether Licensee, by its deliberate

---

**10.** Appellate review of a final order of the PGCB, a Commonwealth agency, is limited to determining whether the necessary findings are supported by substantial evidence, whether the Board erred as a matter of law or violated constitutional rights. 2 Pa.C.S. § 704; *Ins. Fed'n of Pa. v. Dep't of Ins.*, 585 Pa. 630, 889 A.2d 550 (2005). This Court's review of an administrative agency's denial of a petition to intervene is limited to determining whether the agency abused its discretion or committed error of law. *Browning–Ferris, Inc. v. Dep't of Envtl. Res.*, 143 Pa.Cmwlth. 251, 598 A.2d 1061 (1991).

failure to develop the licensed site, and by its affirmative steps to develop a casino at an unapproved site, abandoned its slot machine license. Third, Keystone contends that substantial evidence does not support the Board's decision to grant an extension and that the Board's decision is actually contrary to the evidence. Fourth, Keystone contends the Board erred in granting an extension because it is no longer qualified and suitable to hold a slot machine license.

## C. Petition to Re–Open

Keystone also raises three issues regarding the Board's denial of its petition to re-open its and Licensee's licensing proceedings. First, Keystone contends the Board erred and abused its discretion in determining that Keystone lacked standing to petition to re-open the licensing proceedings. Second, Keystone contends the Board erred, abused its discretion and denied Keystone due process by failing to conduct a valid adjudication to accept evidence of Licensee's post-licensing actions to resolve disputed issues of fact. Third, Keystone contends the Board erred and denied it due process in its order denying Keystone's petition to re-open by making factual findings in the absence of a valid adjudication.

## III. Discussion

### A. Keystone's Petition to Intervene

Keystone first contends the Board erred and abused its discretion in denying its petition to intervene in Licensee's extension proceeding. It also contends the Board erred and abused its discretion by denying Keystone's intervention request on the basis of standing without a fact-finding process.

### 1. Requirements for Intervention

Citing Board regulations at 58 Pa.Code § 493a.12 (Intervention), Keystone argues

it meets the requirements for intervention in Licensee's extension proceeding. Initially, we note 58 Pa.Code § 493a.12 pertinently provides:

(a) *The decision to grant a petition to intervene* in a proceeding before the Board or a presiding officer is *within the sole discretion of the Board.*

. . . .

(c) The Board may grant a petition to intervene if it determines:

(1) The person has an interest in the proceeding which is substantial, direct and immediate.

(2) The interest is not adequately represented by a party to the proceeding.

(3) The person may be bound by the action of the Board in the proceeding.

. . . .

(e) Petitions to intervene must be in writing and set out clearly and concisely the facts demonstrating the nature of the alleged right or interest of the petitioner, the grounds of the proposed intervention, and the position of the petitioner in the proceeding. The petitioner shall fully advise the parties and the Board of the specific issues of fact or law to be raised or controverted, by admitting, denying or otherwise answering, specifically and in detail, each material allegation of fact or law asserted in the petition or complaint initiating the proceeding, and citing by appropriate reference provisions or other authority relied on.

58 Pa.Code § 493a.12(a), (c) and (e) (emphasis added).

### 2. Substantial, Direct and Immediate Interest

Keystone argues it has a substantial financial interest in Licensee's extension proceeding that rises far above the general

public interest in having others comply with the law. *See William Penn Parking Garage v. City of Pittsburgh*, 464 Pa. 168, 346 A.2d 269 (1975) (to establish "aggrieved" status, a party must have a substantial interest, that is, there must be some discernible adverse effect to some interest other than the abstract interest of all citizens in having others comply with the law).

First, Keystone argues, it was one of five applicants for two Philadelphia Category 2 slot machine licenses. It invested more than $10.5 million in an effort to secure a license. Further, the Board found Keystone to be an eligible, qualified and otherwise suitable applicant for a Category 2 license.[11] Moreover, in light of its petition to re-open the licensing proceedings, Keystone is the only remaining 2006 applicant actively seeking a Category 2 license. Therefore, Keystone asserts, these facts alone establish it has an interest in Licensee's license that far exceeds that of the general public. *See Man O' War Racing Ass'n v. State Horse Racing Comm'n*, 433 Pa. 432, 250 A.2d 172 (1969) (a horse racing license is a valuable privilege for which an applicant expends large sums of money; thus an unsuccessful applicant has standing to challenge the granting of licenses to others).

Keystone also contends its interest in Licensee's extension proceeding is direct and immediate. *See William Penn* (to support standing, an interest must be direct, which means that the person claiming to be aggrieved must show causation of the harm to his interest; and the interest must be immediate and not a remote consequence of the judgment, a requirement

addressing the nature of the causal connection). Keystone claims Licensee's willful, post-licensing failure to develop the Columbus Boulevard facility it promised and its attempts to develop a different casino at another site injured Keystone's interests inasmuch as it denied Keystone the opportunity to compete on equal terms in the licensing proceedings. *See Ezy Parks v. Larson*, 499 Pa. 615, 454 A.2d 928 (1982) (where there is no common standard on which bids are based, the integrity of the competitive bidding process is violated and the purpose of competitive bidding is frustrated); *Shaeffer v. City of Lancaster*, 754 A.2d 719 (Pa.Cmwlth.2000) (fairness lies at the heart of the bidding process; all bidders must be confronted with the same requirements and be given the same fair opportunity to bid in free competition with each other).

Keystone asserts that Board regulations at 58 Pa.Code § 441a.7 (licensing hearings for slot machine licenses) give it a substantial, direct and immediate interest to seek enforcement of the regulations governing the competitive licensing process. *See GTECH Corp. v. Dep't of Revenue*, 965 A.2d 1276 (Pa.Cmwlth.2009) (where statutory procedures are not followed, the court's usual response is to void the agency's action). Keystone argues Licensee's post-licensing "bait and switch" undermined the level playing field on which all five applicants competed against each other for the two available licenses and necessitates revocation of its site-specific license. Keystone therefore asserts it has an interest in opposing Licensee's extension petition.[12]

**11.** We note the Board found all five applicants "eligible and suitable for licensure under the terms of the Act." *See* PGCB Licensing Dec., 02/01/07, at 7 Reproduced Record (R.R.) at 69a.

**12.** In further support of "denial of fair competition" argument for standing, Keystone cites several federal court decisions involving standing to bring equal protection claims, including a district court decision addressing Keystone's claims that former Board mem-

Keystone further argues the Act itself mandates that the public interest be taken into account in any Board decision. *See* 4 Pa.C.S. § 1102(10) (the public interest of Commonwealth citizens and the social effect of gaming shall be taken into consideration in any Board decision made under the Act). Keystone asserts the decisions of the Board, as the executive licensing agency for the Commonwealth's casinos, are of significant public interest. *See Man O' War* (decisions of Horse Racing Commission are fraught with the public interest); *MEC Pa. Racing, Inc. v. State Horse Racing Comm'n,* 827 A.2d 580 (Pa. Cmwlth.2003) (commission's licensing decision completely intertwined with the public interest because it will result in the raising of large amounts of tax revenue); *Cashdollar v. State Horse Racing Comm'n,* 143 Pa.Cmwlth. 650, 600 A.2d 646 (1991) (residents of local community had standing to challenge the commission's grant of permit for off-track betting facility). Keystone claims that because Licensee failed to commence operations, the public is not receiving the intended benefits of the issuance of a slot machine license. *See* 4 Pa.C.S. § 1102(3) (authorization of limited gaming intended to provide a significant source of revenue to support property tax relief, wage tax reduction, economic opportunities and other similar benefits).

In addition, Keystone argues injured competitors may be the only persons willing to expend time and money to pursue an appeal on behalf of the public interest. *Application of El Rancho Grande,* 496 Pa. 496, 437 A.2d 1150 (1981) (competitors claiming financial injury resulting from the grant of a license may be the only persons willing to expend the time and money to pursue an appeal as representatives of the public interest). Keystone asserts it may represent the public interest under 4 Pa. C.S. § 1102(10).

Further, Keystone argues that even if the Board denies the extension request and thereafter re-opens the licensing proceedings without awarding Keystone the license, Keystone will significantly gain from the Board's decision. Keystone maintains it is the only remaining "original" applicant with the current intent and capability to develop a casino facility in Philadelphia. Therefore, Keystone asserts it meets the substantial, direct and immediate interest in 58 Pa.Code § 493a.12(c)(1) regardless of whether it is entitled to be awarded the license if Licensee's extension request is denied.

### 3. Keystone's Interest Not Adequately Represented

As to the second element for standing to intervene, Keystone argues its interest was not adequately represented by any other party to the extension proceeding.

---

bers violated its equal protection rights by discriminating against its license application on the basis of Keystone's affiliation with Atlantic City casinos. *See Keystone Redevelopment Partners v. Decker,* 674 F.Supp.2d 629 (M.D.Pa.2009) (citing *N.E. Fla. Chapter of the Associated Gen. Contractors of Am. v. City of Jacksonville,* 508 U.S. 656, 113 S.Ct. 2297, 124 L.Ed.2d 586 (1993)) (Keystone had standing in federal district court to bring an equal protection claim against former PGCB members, regardless of the PGCB's denial of its license application, to assert a claim that the PGCB gave preferential treatment to appli-

cants without any Atlantic City affiliation; the injury was not the denial of the license itself, but the denial of the opportunity to compete against other applicants on equal terms). *See also Lac Vieux Desert Band of Lake Superior Chippewa Indians v. Michigan Gaming Control Bd.,* 172 F.3d 397 (6th Cir.1999) (Indian tribe able and ready to submit a bid for a Detroit casino bid had standing to bring equal protection and First Amendment claims challenging a Detroit ordinance granting preferential treatment to developers that supported casino gaming proposals).

*See* 58 Pa.Code § 493a.12(c)(2) (Board may grant a person intervenor status where that person's interest is not adequately represented by a party to the proceeding). Keystone asserts it is uniquely situated because it is the only one of the original applicants with the current capability of developing a gaming facility that petitioned to re-open the licensing proceedings in response to Licensee's failure to develop its riverfront casino in a timely manner. Keystone further asserts BIE and OEC, who are responsible for enforcement of the Act, do not adequately represent Keystone's interest in obtaining a Category 2 license.

### 4. Intervenor Bound by Board's Decision

Keystone further claims that it easily meets the third requirement for standing to intervene under 58 Pa.Code § 493a.12(c)(3) (person may be bound by the action of the Board in the proceeding). Keystone alleged in its petition to intervene that it may be bound by the Board's decision in the extension proceeding because the Board may rule, either expressly or implicitly, on the issue of whether Licensee, by its conduct and announced plans to relocate its casino to Center City, abandoned its license. Thus, Keystone argues the Board's findings and legal conclusions in the extension proceeding will impact Keystone's ability to secure a Category 2 license.

### 5. Summary Denial of Intervention

Keystone next contends the Board failed to render a valid adjudication of Keystone's standing to intervene in the extension proceeding. In this argument,

Keystone contends the Board erred in summarily denying Keystone's petition to intervene without finding any facts regarding whether Licensee willfully failed to comply with its license or whether Keystone remains eligible and suitable for a license. *See Citizens Against Gambling Subsidies, Inc. v. Pa. Gaming Control Bd.*, 591 Pa. 312, 916 A.2d 624 (2007) (matters of standing may involve factual questions). Keystone asserts due process and sound practice mandate that an agency adjudicate an issue of an intervenor's standing where there are contested issues of fact. *See Horsley v. Phila. Bd. of Pensions & Ret.* 519 Pa. 264, 546 A.2d 1115 (1988) (citing *Pa. Human Relations Comm'n v. Thorp, Reed & Armstrong*, 25 Pa.Cmwlth. 295, 361 A.2d 497 (1976)) (the resolution of disputed facts, which are subject to limited appellate review, is the most critical function in the prosecution and adjudication of administrative cases). Here, Keystone argues, the Board's failure to make findings regarding Keystone's standing to intervene in the extension proceeding nullifies the Board's denial of intervention. *See Callahan v. Pa. State Police*, 494 Pa. 461, 431 A.2d 946 (1981) (right of judicial review of an administrative decision occurs only after an adjudication as defined by 2 Pa.C.S. § 504).[13]

### 6. Analysis

Keystone asserts standing to intervene in Licensee's extension petition as a competitor for a Category 2 license and also as a representative of the public interest. We reject Keystone's arguments, however, because even if it satisfied all the criteria set forth in the regulation, the

---

**13.** Section 504 of the Administrative Agency Law, 2 Pa.C.S. § 504 provides (with emphasis added):

No adjudication of a Commonwealth agency shall be valid as to any *party* unless he shall have been afforded reasonable notice of a hearing and an opportunity to be heard. All testimony shall be stenographically recorded and a full and complete record shall be kept of the proceedings.

Board would not be compelled to permit intervention. Rather, the Board's decision on intervention is an exercise of discretion, the review of which is deferential.

■ Critically, the decision to grant a petition to intervene in a Board proceeding "is within the sole discretion of the Board." 58 Pa.Code § 493a.12(a). *See also W. Chester Area. Sch. Dist. v. Collegium Charter Sch.*, 571 Pa. 503, 812 A.2d 1172 (2002) (granting or denying a petition to intervene is within the sound discretion of the agency involved); *Malt Beverages Distrib. Ass'n v. Pa. Liquor Control Bd.*, 965 A.2d 1254 (Pa.Cmwlth. 2009) (same). An agency's decision on intervention will not be disturbed absent a manifest abuse of discretion. *Malt Beverages. See also Bedford Downs Mgmt. Corp. v. State Harness Racing Comm'n*, 592 Pa. 475, 926 A.2d 908 (2007) (judicial review of a decision committed to a licensing agency's discretion is severely limited and will only be overturned where there was a clear abuse of discretion). An abuse of discretion is not merely an error in judgment; it requires much more. *Bedford Downs.* Discretion is abused where the law is overridden or misapplied, or the judgment exercised is clearly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence or the record. *Id.*

Here, numerous uncontested facts support the Board's exercise of discretion regarding intervention. These uncontested facts include the following:

1) Keystone was an unsuccessful applicant for a Category 2 license, and its application was denied in a 2006 public vote; and

2) Keystone did not appeal the denial of its application; and

3) Keystone did not appeal the award of a license to Licensee; and

4) The licensing proceedings for initial Category 2 licenses are closed (PGCB Licensing Dec., 02/01/07, at 113, R.R. at 175a); and

5) The statutory period for awarding initial Category 2 licenses has past (4 Pa.C.S. § 1301); and

6) There are no Category 2 licenses available; and

7) Nearly three years passed between the Board's 2006 public vote on the Category 2 license applications and the 2009 intervention petition; and

8) Keystone does not hold a license granted by the Board, nor is it operating a gaming establishment in Pennsylvania in competition with Licensee; and

9) Licensee made no formal request to relocate its licensed operation; and

10) There exist parties authorized by the Act to represent the public interest, BIE and its OEC.

Given these uncontested facts, we discern no abuse of discretion in the Board's decision to deny intervenor status to Keystone without a full, adversarial hearing. While this analysis is sufficient by itself to affirm the Board's exercise of discretion, we briefly discuss the intervention criteria as supplemental reasons supporting our holding.

### a. Substantial, Direct and Immediate Interest

#### i.

■ To support standing, an interest must be "direct," which requires the person claiming to be aggrieved to show the matter of which it complains caused harm to its interest. *Malt Beverages.* In addition, an interest must be "immediate" and not a remote consequence of the judgment. *Id.* In light of the uncontested facts set forth above, we conclude that Keystone has no current interest harmed by the

action of the Board, and any interest Keystone may have in future license proceedings is remote and not immediate. Therefore, regardless of whether its purported interest is substantial, it will not support standing. The Board did not override or misapply the law on the standing issue.

### ii.

We specifically reject Keystone's argument that as the only non-North Delaware Avenue applicant found eligible and suitable in 2006, it would be entitled to a Category 2 license now because Licensee ultimately abandoned its site-specific license by attempting to relocate. Our rejection is based on the passage of time and on Keystone's mischaracterization of the Board's decision. As the Supreme Court recognized in *Riverwalk,* "the Board did not find the North Delaware Avenue corridor could not support two casinos." 592 Pa. at 538–39, 926 A.2d at 946. Instead, the Board merely determined none of the applicants presented sufficient, credible evidence supporting a finding that traffic associated with two casinos could be adequately managed along the North Delaware Avenue corridor. *Id.* In addition, the Board also found serious traffic and location problems with Keystone's Trump Street proposal. *See* PGCB Licensing Dec., 02/01/07, at 84–85; R.R. at 146a–47a. The Board remained unconvinced of Keystone's chances for accomplishing long-term success and providing the promised economic development at the Trump Street location. *Id.*

### iii.

We also dismiss Keystone's argument that it has standing to oppose Licensee's extension petition based on its claimed injury in the nature of a denial of fair competition in the licensing proceedings. Here, Keystone asserts Licensee's post-licensing "bait and switch" resulted in the denial of fair competition in the licensing proceedings. Thus, Keystone, as a member of a "small pool of applicants affected by Licensee's bait and switch," had an interest in seeking enforcement of the Board's regulations at 58 Pa.Code § 441a.7 (licensing hearings for slot machine licenses) governing the competitive licensing process by opposing Licensee's extension petition.

However, Keystone raises this standing argument for the first time on appeal here. Nowhere in its petition to intervene did Keystone aver that the licensing proceedings were unfair or that the Board failed to enforce its regulations. Even here, Keystone does not specify what provision of 58 Pa.Code § 441a.7 the Board failed to enforce during the licensing proceedings.

More importantly, the licensing proceedings closed on December 20, 2006, when the Board voted to award the two available licenses to HSP and Licensee and to deny the three remaining applications. Keystone did not appeal the Board's final licensing order. Therefore, any interest Keystone had in seeking enforcement of the Board's regulations governing the competitive licensing process ceased when the licensing proceedings closed and Keystone's status as an applicant or competitor for a license terminated.[14]

---

14. We also note that the equal protection cases cited by Keystone in support of its claim of standing in the extension proceeding to challenge the fairness of the licensing proceedings are inapplicable here. Those cases addressed the issue of standing to bring an equal protection claim for past harm based on

preferential treatment during the licensing proceeding. *See Associated General Contractors* (city ordinance provided for preferential treatment for minority-owned businesses); *Keystone Redevelopment* (PGCB's licensing decision considered Keystone's affiliation with three Atlantic City casinos to be a negative

Thereafter, Licensee's post-licensing actions became a regulatory matter for the Board. The remedy available to Keystone to challenge Licensee's post-licensing actions is to inform the Board, pursuant to Section 1326(b) of the Act (license renewals; revocation or failure to renew) that Licensee *"furnished the [B]oard with false or misleading information or that the information contained in* the applicant's initial application ... is no longer true and correct." 4 Pa.C.S. § 1326(b) (emphasis added).

### iv.

Further, as discussed more fully below, Keystone, no longer an applicant or a party to any Board proceeding, lacked the required standing and legal authority under the Act and the regulations to petition to re-open the licensing proceedings or otherwise seek revocation of Licensee's license. *See* 58 Pa.Code § 493a.4 (petitions may *only* be filed by BIE, parties, applicants, licensees, permittees, persons registered or certified by the Board, or other persons authorized by the Board); 4 Pa. C.S. § 1202(a)(1) (Board has sole regulatory authority over gaming and related activities); 4 Pa.C.S. § 1517(a.2) (BIE and OEC, in its sole discretion, may initiate noncriminal proceedings for a violation of the Act); 4 Pa.C.S. § 1326(b) (Board, at its discretion may suspend, deny or revoke any license for a violation of any provision of the Act). As a result, Keystone cannot establish eligibility to intervene in Licensee's extension proceeding based upon its petition to re-open the licensing proceedings.

factor); and *Lac Vieux* (city ordinance provided for preferential treatment for developers who supported casino gaming proposals). Here, Keystone asserts the licensing proceedings were rendered unfair based on Licen-

### v.

We further reject Keystone's contention that the Act itself supports its assertion of standing to represent the public interest in Licensee's extension proceeding. *See* 4 Pa.C.S. § 1102(10) (public interest of Commonwealth citizens and the social effect of gaming shall be taken into consideration in any Board decision made under the Act). Rather, we agree with the Board that under the Act, BIE and OEC are charged with the duty to represent the public's interest in matters such as Licensee's extension proceeding. In particular, Section 1517(a.2) of the Act pertinently provides:

(1) *There is established within [BIE] an Office of Enforcement Counsel, which* shall act as the prosecutor in all noncriminal enforcement actions initiated by [BIE] under this [Act] and *shall have the following powers and duties:*

(i) Advise [BIE] on all matters, including the granting of licenses, permits or registrations, the conduct of background investigations, audits, and inspections and the investigation of potential violations of this [Act].

(ii) File recommendations and objections relating to the issuance of licenses, permits and registrations on behalf of [BIE].

(iii) *Initiate, in its sole discretion, proceedings for noncriminal violations of this [Act] by filing a complaint or other pleading with the [B]oard.*

4 Pa.C.S. §§ 1517(a.2)(1)(i-iii) (emphasis added).

Here, BIE, through OEC, filed an answer and new matter objecting to any attempt by Licensee to obtain an extension in order to relocate its casino site from

see's *post-licensing actions,* not because of any preferential treatment during the licensing proceedings. Consequently, these cases are inapposite.

Columbus Boulevard to Center City. *See* BIE's Answer to Licensee's Extension Pet. at ¶¶ 41–48; R.R. at 369a–70a. BIE further objected to the extension petition pending a full evidentiary hearing before the Board at which Licensee had to present documentation of its efforts to obtain the necessary permits, approvals and funding, or guarantees of funding necessary for construction of the Columbus Boulevard facility. *Id.* at ¶ 48; R.R. at 370a.

In addition, the Board itself effectively represented the public interest during Licensee's extension proceeding. The Board repeatedly advised Licensee it would only grant an extension for Licensee to build the facility it promised, and build it at the Columbus Boulevard site.

### vi.

Further, Keystone's reliance on *MEC, Cashdollar* and *El Rancho Grande* which recognize a competitor's standing to represent the public interest, is misplaced. In *El Rancho Grande* and *MEC*, the successful intervenors were already licensed competitors in the same area. Here, Keystone is not a slot machine licensee in Pennsylvania. Our decision in *Cashdollar* is also inapplicable here. *Cashdollar* involved a different statute granting standing to local community residents who could provide certain information the State Horse Racing Commission was directed to consider in awarding an off-track betting license.

### b. Keystone's Interest Not Adequately Represented

For the reasons discussed above, we also reject Keystone's contention that no current party to Licensee's extension proceeding will adequately represent Keystone's interests "as one of five original applicants" for a Category 2 license. As discussed, the Board denied Keystone's application for a license, and that order is now final. Nevertheless, Keystone asserts

it is uniquely situated because it alone sought to re-open the licensing proceedings, to "reactivate" its application and to update or supplement it as the Board deems necessary. As such, Keystone argues neither BIE nor any party to the extension proceeding adequately represents its interest.

We disagree. First, following the denial of its application and the award of the only two available Category 2 licenses for the City, Keystone no longer had an interest in a Category 2 license. *Citizens Against Gambling Subsidies; Pittsburgh Palisades Park, LLC v. Commonwealth*, 585 Pa. 196, 888 A.2d 655 (2005). In addition, Keystone lacks the legal authority under the Act and applicable regulations to petition to re-open the licensing proceedings. In sum, Keystone has no greater interest in Licensee's license than the general public. The Board itself, BIE and OEC adequately represent the public's interest in Licensee's extension proceeding.

### c. Keystone Bound by Board's Decision

We also reject Keystone's bootstrap argument that it may be bound by the Board's extension order if the Board determines Licensee abandoned its site-specific license. In the absence of a formal petition by Licensee to relocate, the Board need not accept such a remote occurrence as a basis for intervention.

### d. Denial without Hearing

■ Finally, the Board did not err, abuse its discretion or violate Keystone's due process rights by denying Keystone's petition to intervene without holding a full adversarial hearing on the issue of whether Licensee failed to comply with its license or remains eligible for a license. This is because factual issues regarding Licensee's post-licensing actions or con-

duct are irrelevant to the issue of whether Keystone met the requirements for intervention in 58 Pa.Code § 493.12(c)(1)-(3), and the operative facts regarding intervention are undisputed.

Where there are no disputed facts regarding a person's standing to intervene, the proceeding on the intervention petition, including briefs and oral argument, provides an adequate opportunity for the parties to be heard for purposes of 2 Pa. C.S. § 504. *Independence Blue Cross v. Pa. Ins. Dep't*, 802 A.2d 715 (Pa.Cmwlth. 2002) (citing *United Healthcare Benefits v. Ins. Comm'r of Pa.*, 152 Pa.Cmwlth. 549, 620 A.2d 81 (1993)).

Here, the initial licensing proceedings closed in 2006. Keystone is no longer an applicant or competitor for Licensee's license; thus, it has no interest in Licensee's license that could be adversely affected by the Board's decision in the extension proceeding. Because there were no facts in dispute regarding Keystone's standing to intervene, the Board did not violate Keystone's due process rights by failing to hold an evidentiary hearing on its intervention request. *Id.* Further, the Board acted within its administrative discretion in denying Keystone's petition to intervene after considering the parties written and oral arguments. *W. Chester Area Sch. Dist.; Malt Beverages.*

Moreover, Keystone is no longer a party to any Board proceeding, including Licensee's extension proceeding. Therefore, the due process protections in 2 Pa.C.S. § 504, which apply to a party in a Commonwealth agency adjudication, do not apply to Keystone. *See Callahan* (a *party* to an agency proceeding is entitled to full panoply of due process rights).

## B. Extension Petition

### 1. Keystone's Arguments

Keystone next contends the Board erred, abused its discretion and denied Keystone's due process rights by granting Licensee's extension petition. Keystone first asserts Licensee, by its actions, created its own inability to meet the one-year opening requirement in the former version of 4 Pa.C.S. § 1210(a), applicable here, which provided in pertinent part (with emphasis added):

> [A]ll slot machine licensees ... shall be required to operate and make available for play a minimum of 1,500 machines at any one licensed facility within one year of the issuance by the [B]oard of a slot machine license *unless otherwise extended by the board, upon application and for good cause shown, for an additional period not to exceed 24 months.*

Keystone asserts the Board erred in finding Licensee established "good cause" for an extension of time to construct a casino because Licensee's reasons for its noncompliance were of its own making. Keystone argues that Section 1210(a) of the Act, by requiring a showing of "good cause" imposes a higher burden of proof on an applicant than required for other Board decisions for which "good cause" is not a statutory requirement. In support, Keystone cites *Sun Shipbuilding & Dry Dock Co. v. Unemployment Compensation Board of Review*, 358 Pa. 224, 56 A.2d 254 (1948), where the Supreme Court reasoned that statutory "good cause" must be determined in each case from the facts of that case in accord with the fundamental purpose of the statute.

Here, Keystone asserts, Licensee was well aware of the potential issues and public opposition when it selected a controversial site. Licensee also obtained Supreme Court orders directing the City to issue the required zoning and building permits, but declined to obtain these permits from the City in a timely manner because that

would require Licensee to begin construction. Instead, Licensee ceased its efforts to develop the Columbus Boulevard site and began taking affirmative steps to relocate its casino to an unapproved site.

Keystone argues the time Licensee spent looking at other unapproved sites, nearly nine months out of the 12 months allotted to open the casino, and the affirmative steps Licensee took to negotiate a new casino site, must weigh against its extension request. Licensee's volitional efforts to develop a different site wholly undermine its assertion of good cause for its failure to develop the Columbus Boulevard site.

Keystone further argues the Board erred in concluding Licensee and HSP were similarly situated with regard to their reasons for an extension request. HSP focused exclusively on developing its approved SugarHouse Casino. None of the delays HSP experienced were caused by its efforts to develop other casino sites. HSP also made greater efforts in making use of the office of Special Master to resolve zoning disputes, obtaining the required approvals and beginning construction.

Keystone also maintains the Board did not make adequate findings as to whether Licensee's post-licensing actions were sufficiently similar to HSP's post-licensing actions. As a result, the comparison of the two projects is flawed.

### 2. Appellees' Response

In response, the Board and Licensee first contend Keystone's failure to attain party status as an intervenor precludes it from appealing the Board's extension order. *See In re Barnes Found.*, 582 Pa. 370, 871 A.2d 792 (2005) (failure to obtain intervenor status foreclosed appellant's ability to appeal trial court's order under Pa. R.A.P. 501);[15] *Boerner v. Hazle Twp. Zoning Hearing Bd.*, 845 A.2d 210 (Pa. Cmwlth.2004) (where trial court denied objector's untimely petition to intervene in a zoning case, objector lacked standing to appeal the merits of the case); *In re Rowan*, 763 A.2d 958 (Pa.Cmwlth.2000) (unsuccessful intervenor has no standing to challenge merits of trial court's order). *See also* 20 G. RONALD DARLINGTON ET AL., *Pa. Appellate Practice*, § 501:7 (2009–10 ed.) (emphasis added) ("[I]t behooves an individual or group interested in issues in a matter pending in the Pennsylvania courts or agencies to attain intervener status at the lower level as soon as possible. Obtaining intervention status before an agency involves a demonstration of aggrievement, i.e., having a direct and substantial interest in the agency's adjudication and showing a close causal connection between the agency decision and the asserted injury. *The failure to obtain intervener status negates the ability to file an appeal.*")

The Board further argues Keystone, a non-party denied intervention, also lacks the required "direct interest" to appeal the Board's extension order as an "aggrieved person" under Section 702 of the Administrative Agency Law, which provides, "Any person aggrieved by an adjudication of a Commonwealth agency who has a direct interest in such adjudication shall have the right to appeal therefrom to the court vested with jurisdiction of such appeals...." 2 Pa.C.S. § 702. In *Citizens Against Gambling Subsidies,* the Supreme Court recognized (with emphasis added):

---

**15.** Pa. R.A.P. 501 provides: "Except where the right of appeal is enlarged by statute, any party who is aggrieved by an appealable order, or a fiduciary whose estate or trust is so aggrieved, may appeal therefrom."

by virtue of Section 702 of the Administrative Agency Law, neither party status nor traditional aggrievement is necessary to challenge actions of an administrative agency. Rather, standing to appeal administrative decisions extends to "persons," including non-parties, who have a "direct interest" in the subject matter, as distinguished from a "direct, immediate and substantial" interest. *A direct interest requires a showing that the matter complained of caused harm to the person's interest. Although not the full equivalent of "direct, immediate and substantial," the direct interest requirement retains the function of differentiating material interests that are discrete to some person or limited class of persons from more diffuse ones that are common among the citizenry.*

591 Pa. at 319, 916 A.2d at 628 (citations omitted).

### 3. Analysis

■ We agree with the Board. First, as discussed above, the Board did not err, abuse its discretion or violate Keystone's due process rights in denying its petition to intervene on the basis that it lacked a direct and immediate interest in Licensee's extension proceeding. Keystone's failure to obtain party status as an intervenor in the extension petition precludes it from appealing under Pa. R.A.P. 501. *Citizens Against Gambling Subsidies; Barnes Found.; Rowan.*

■ Second, Keystone also lacks the "direct interest" required to appeal the Board's extension order as an "aggrieved person" under 2 Pa C.S. § 702. Although Keystone spent a large sum of money in its effort to secure a Category 2 license, the Board denied its application in December, 2006. Moreover, Keystone did not

appeal the Board's denial of its application. In short, in 2009, more than two years after the Board denied its license application, Keystone no longer had an immediate direct interest in a Category 2 license capable of being harmed by the Board's decision in the extension proceeding. Therefore, Keystone lacked standing to appeal the Board's extension order as an "aggrieved person" under 2 Pa.C.S. § 702. *Citizens Against Gambling Subsidies; Capital BlueCross v. Ins. Dep't,* 937 A.2d 552 (Pa.Cmwlth.2007), *appeal denied* sub *nom., Sklaroff v. Ario,* 600 Pa. 106, 963 A.2d 906 (2009).

Because Keystone lacked standing to appeal the Board's extension order either as an "aggrieved party" under Pa. R.A.P. 501 or an "aggrieved person" under 2 Pa.C.S. § 702, we quash Keystone's petition for review at 2145 C.D. 2009 to the extent it seeks review of the Board's extension order. *See Capital BlueCross* (where appellant lacks standing to appeal agency adjudication under either Pa. R.A.P. 501 or 2 Pa.C.S. § 702, the proper remedy is to quash the petition for review).[16]

### C. Petition to Re-open

### 1. Keystone's Argument

Keystone next contends the Board erred and abused its discretion in determining that Keystone lacked standing to petition to re-open its and Licensee's initial licensing proceedings. Here, Keystone asserts the Board erred in determining it waived its right to re-open the licensing proceedings by not appealing the Board's licensing decision. Keystone contends none of the facts supporting its argument that Licensee abandoned or forfeited its license were in existence at the time the Board issued its licensing decision. Further, Keystone

---

**16.** Having quashed Keystone's appeal from the Board's extension order we need not address Keystone's remaining challenges to the Board's extension decision.

argues there is nothing in *Riverwalk*, the Supreme Court's decision upholding the Board's licensing decision, that compels such a preclusive effect because the facts supporting the assertion that Licensee abandoned its license were not in existence.

Keystone further contends the Board's determination that it does not have standing under 58 Pa.Code § 493a.4(a) to petition to re-open the license application proceedings, violates its due process rights by denying it access to the Board to raise issues of fact, law and equity regarding Licensee's actions. *See Pa. Bankers Ass'n v. Pa. Dep't of Banking*, 598 Pa. 313, 956 A.2d 956 (2008) (basic tenets of due process apply with equal force in both administrative and judicial proceedings).

Keystone also contends the Board erred, abused its discretion and denied it due process by denying the petition to re-open without holding a fact-finding proceeding to accept evidence of Licensee's post-licensing actions and to resolve disputed issues of fact regarding Licensee's failure to develop the Columbus Boulevard site. Rather, Keystone asserts, the Board simply stated in its decision that the petition to re-open was moot because it granted Licensee's extension petition. In so doing, the Board abdicated its duty to enforce the Act and arbitrarily executed its statutory responsibilities. Keystone contends it is entitled to an adjudication of its claims in the petition to re-open.

■ Finally, Keystone contends the Board erred and denied it due process by denying its petition to re-open by making factual findings in the absence of a valid adjudication. Here, Keystone asserts the Board erred and denied it due process by accepting unsworn, conclusory statements of OEC's chief counsel on the issue of whether Licensee abandoned its license. OEC's chief counsel was not subject to cross-examination and did not identify any facts upon which his conclusions were based. Keystone had no opportunity to present evidence. Thereafter, the Board issued an order denying the petition to re-open containing the finding that Licensee has not abandoned its license. Due process requires a reasonable opportunity to meet and rebut evidence used by an administrative agency. *Manor v. Dep't of Pub. Welfare*, 796 A.2d 1020 (Pa.Cmwlth. 2002).

### 2. Analysis

### a. Standing

■ In its petition to re-open, Keystone averred (with emphasis added):

Pursuant to 58 Pa.Code § 493a.4, [Keystone] petitions the [Board] to declare Category 2 Slot Machine License No. F–1367 . . . to be abandoned, forfeited or revoked and, therefore, available for issuance to an eligible, qualified and suitable applicant . . . *and to approve Keystone's application for a Category 2 slot machine license.* Keystone, in support, states:

\* \* \*

30. *Keystone is the sole remaining qualified, eligible and suitable applicant that submitted a timely application for a Category 2 slot machine license in the City of Philadelphia.* (Citation omitted.) (R.R. at 186a, 192a)

Pursuant to 58 Pa.Code § 493a.4(a), "[p]etitions may be filed by BIE, parties, applicants, licensees, permittees, persons registered or certified by the Board, and other persons authorized by the Board." For the reasons below, we agree with Licensee that following the Board's denial of Keystone's application in 2006, it lacked standing under 58 Pa.Code § 493a.4(a) to

petition the Board to reopen the 2006 licensing proceedings.

First, Keystone is no longer an applicant for a Category 2 license. The Board denied Keystone's application in December, 2006, and there are currently no Category 2 licenses available. The Act defines an "applicant" as "[a]ny person who, on his own behalf, or on behalf of another, is applying for permission to engage in any act or activity which is regulated under the provisions of this [Act]." 4 Pa.C.S. § 1103. Here, Keystone remained an applicant until the Board denied its application. At that point, Keystone's status as an "applicant" under the Act terminated. Keystone did not appeal the Board's denial of its application. In addition, Keystone filed no further applications with the Board. Consequently, Keystone lacks standing as an applicant to petition to re-open the licensing proceedings under 58 Pa.Code § 493a.4(a).

Second, Keystone is no longer a party to any Board proceeding. A "party" is defined by Board regulations as "[a] person who is named in or admitted to a proceeding before the Board and who has a direct interest in the subject matter of the proceeding." 58 Pa.Code § 491a.2 (emphasis added). Keystone is no longer a named party to any Board proceeding and lost any interest it had in a Category 2 license when the Board denied its application. Thus, Keystone's status as a party to a Board proceeding also terminated when the Board denied its application.

Third, Keystone never sought authorization from the Board to file its petition to re-open, and the Board never granted it. Although Keystone contends 58 Pa.Code § 493a.4(a) violates its due process rights by precluding it from accessing the Board to raise issues of fact, law and equity, Keystone no longer has an interest in a Category 2 license requiring due process protection.

 For the same reasons, the Board did not err in determining Keystone failed to meet the "traditional aggrievement" test for standing to petition to re-open the licensing proceedings. In order to obtain judicial resolution of a dispute, a person must, as a threshold matter, establish standing to bring the action. *Pittsburgh Palisades Park; Stilp v. Commonwealth*, 927 A.2d 707 (Pa.Cmwlth.2007). A person who is not adversely affected by the matter he seeks to challenge is not aggrieved by it and therefore lacks standing to invoke the judicial process. *Id.* Judicial intervention is only appropriate where the underlying controversy is real and concrete. *Id.*

As discussed above, Keystone's status as an unsuccessful 2006 applicant for a Category 2 license does not vest it with standing in 2009 to petition to re-open the initial licensing proceedings. Keystone lost any interest in a Category 2 license when the Board denied its initial license application and awarded the two available licenses to Licensee and HSP. *Pittsburgh Palisades Park*.

Keystone averred in its petition to re-open that it has an interest in a Category 2 license based on it is status as the only non-North Delaware Avenue applicant found eligible and suitable in 2006 and Licensee's abandonment or forfeiture of its license by its attempts to relocate. In rejecting this argument above, we relied in part on the passage of time. Even if the Board ultimately revokes Licensee's license, Keystone would not be entitled to it. Rather, Keystone would have to establish its current suitability for a license in a new application proceeding. Consequently, Keystone's status as an unsuccessful 2006 applicant for a Category 2 license does not

give it standing to now petition to re-open the initial licensing proceedings. *Id.*

### b. Legal Authority

We also agree with the Board that Keystone lacks either standing or the legal authority under the Act to petition the Board to petition to re-open the licensing proceedings and revoke Licensee's license. Rather, only the Board, BIE and OEC have the regulatory authority to revoke a slot machine license.

As to the Board, Section 1202(a) of the Act (Board's general and specific powers) provides (with emphasis added):

(1) The [B]oard shall have general and sole regulatory authority over the conduct of gaming or related activities as described in this [Act]. *The [B]oard* shall ensure the integrity of the acquisition and operation of slot machines and associated equipment and *shall have sole regulatory authority over every aspect of the authorization and operation of slot machines.*

4 Pa.C.S. § 1202(a)(1). Moreover, Section 1207(1) of the Act, 4 Pa.C.S. § 1207(1) (regulatory authority of the Board) authorizes the Board to (with emphasis added):

Deny, deny the renewal, *revoke, condition or suspend any license* or permit provided for in this [Act] *if the [B]oard finds in its sole discretion that a licensee or permittee under this [Act], or its officers, employees or agents, have furnished false or misleading information* to the [B]oard or failed to comply with the provisions of this [Act] or the rules and regulations of the [B]oard *and that it would be in the public interest to* deny, deny the renewal, *revoke, condition or suspend any license* or permit.

Further, Section 1326(b) of the Act, 4 Pa. C.S. § 1326(b) (license renewals; revoca-

tion or failure to renew) pertinently provides (with emphasis added):

**Revocation or failure to renew.**—*In addition to any other sanctions the [B]oard may impose under this [Act], the [B]oard may at its discretion suspend, revoke,* or deny renewal of any permit or *license issued under this [Act] if it receives any information from any source that the applicant or any of its officers, directors, owners or key employees is in violation of any provision of this [Act], that the applicant has furnished the [B]oard with false or misleading information or that the information contained in the applicant's initial application or any renewal application is no longer true and correct.* In the event of a revocation or failure to renew, the applicant's authorization to conduct the previously approved activity shall immediately cease, and all fees paid in connection therewith shall be deemed to be forfeited.

Regarding BIE and OEC, BIE may investigate licensees and bring enforcement actions under the Act. 4 Pa.C.S. §§ 1517(a.1)(1) and (3). OEC, established within BIE, shall act as the prosecutor in all noncriminal enforcement actions brought by BIE. 4 Pa.C.S. § 1517(a.2)(1). Further, OEC may "[i]nitiate, in its sole discretion, proceedings for noncriminal violations of this part by filing a complaint or other pleading with the [B]oard." 4 Pa. C.S. § 1517(a.2)(1)(iii).

In short, the Act vests the Board with sole regulatory authority over the conduct of gaming and the revocation of licenses. 4 Pa.C.S. §§ 1202(a)(1), 1207(1) and 1326(b). The Act also vests BIE and OEC with sole discretionary authority to bring enforcement actions.[17] 4 Pa.C.S.

---

17. As discussed above, BIE, through OEC

consistently objected to and opposed any at-

§§ 1517(a.1) and (a.2). Nothing in the Act or the Board's regulations authorized Keystone to petition the Board to revoke Licensee's license. Therefore, Keystone lacked either the required standing or the legal authority under the Act to petition to re-open the licensing proceedings to revoke Licensee's license.

### c. Timeliness

We also note Keystone's petition to re-open, filed in January, 2009, years after the award of the licenses, was untimely. Board regulations at 58 Pa.Code § 494a.6 (reopening of record) pertinently provide (with emphasis added):

> (a) After the conclusion of the hearing, a party in a proceeding may file with the presiding officer, prior to the issuance of a report and recommendation, a petition to reopen the proceeding for the purpose of taking additional evidence. The petition must set forth clearly the facts claimed to constitute grounds requiring reopening of the proceeding, including material changes of fact or law alleged to have occurred since the hearing was concluded.

> * * *

> (f) *Prior to the issuance of a final order, the Board,* after notice to the parties, *may reopen the proceeding* for the receipt of further evidence, if the Board has reason to believe that the facts or law have changed as to require, or that the public interest requires, the reopening of the proceeding.

> (g) This section supercedes 1 Pa.Code §§ 35.231—35.233 (relating to reopening of record).

This reasonable regulation balances a party's interest in bringing after-discovered

tempt by Licensee to seek an extension to relocate its casino site away from Columbus

evidence to the attention of the Board against the public's interest in finality in the issuance of licenses.

Here, Keystone sought to re-open both its and Licensee's licensing proceedings years after the Board's licensing decision. Clearly, Keystone's petition to re-open was untimely under 58 Pa.Code §§ 494a.6(a) and (f).

### d. Evidentiary Hearing

 We also reject Keystone's contention that the Board denied it due process by rejecting the petition to re-open without holding a fact-finding proceeding to accept evidence of Licensee's post-licensing actions and to resolve disputed issues of fact regarding Licensee's failure to develop the Columbus Boulevard site. As discussed above, Keystone lacks both standing and the legal authority under the Act to petition for revocation of Licensee's license. Nevertheless, the Board considered oral and written arguments from Keystone, Licensee and OEC on Keystone's petition to re-open. Thus, any rights which Keystone may have in any particular process were not violated.

We further reject Keystone's contention that the Board denied it due process by accepting unsworn, conclusory statements from OEC's chief counsel on the issue of whether Licensee abandoned its license. At the end of oral argument on Keystone's petition to re-open, the Board asked if OEC had anything to add. See N.T., Bd. Hr'g of October 21, 2009, at 23–24; R.R. at 587a–88a. OEC's chief counsel argued the record showed Licensee did not abandon its license. He asserted Licensee's representatives stated on the record that they remain committed to developing the Columbus Boulevard site. *Id.* at 24; R.R. at

Boulevard.

588a. OEC is keeping track of what Licensee is doing. If it feels Licensee abandoned its license, it will move to revoke the license. *Id.* at 23–24; R.R. at 587a–88a. OEC's chief counsel did not testify as to facts; rather, he stated OEC's position. Any rights which Keystone may have in any process were not violated.

### d. Mootness.

 Finally, we agree with the Board that its September, 2009, order granting Licensee an extension petition rendered Keystone's petition to re-open moot. The Board granted Licensee an extension until the end of May, 2011, to open a casino at the Columbus Boulevard site that is substantially similar to the one proposed in Licensee's application.

It is well-settled principle that "in general courts will not decide moot questions unless there is an actual case or controversy existing at all stages of the judicial or administrative process...." *Nutter v. Dougherty,* 921 A.2d 44, 61 (Pa.Cmwlth.), *aff'd,* 595 Pa. 340, 938 A.2d 401 (2007) (citing *Pub. Defender's Office of Venango Cnty. v. Venango Cnty. Court of Common Pleas,* 586 Pa. 317, 893 A.2d 1275 (2006)). In *Venango,* the Supreme Court summarized the mootness doctrine as follows:

> The cases presenting mootness problems involve litigants who clearly had standing to sue at the outset of the litigation. The problems arise from events occurring after the lawsuit has gotten underway—changes in the facts or in the law—which allegedly deprive the litigant of the necessary stake in the outcome. The mootness doctrine requires that an actual case or controversy must be extant at all stages of review, not merely at the time the complaint is filed.

586 Pa. at 325, 893 A.2d at 1279 (citations omitted). Further, the existence of a case or controversy requires a real rather than hypothetical controversy and one that affects an individual in a concrete manner. *Nutter* (citing *Mistich v. Pa. Bd. of Prob. & Parole,* 863 A.2d 116 (Pa.Cmwlth.2004)).

Here, Keystone based its petition to re-open on Licensee's alleged abandonment of the Board-approved Columbus Boulevard site and on attempts to relocate to a non-riverfront location. The Board, however, determined in its extension decision that Licensee established good cause for a 24-month extension and that Licensee remained committed to developing the Columbus Boulevard site as it proposed in its application. Moreover, the Board's extension order specifically limited Licensee to developing a casino substantially similar to the one it proposed at the Board-approved site.

Because the Board granted Licensee an extension until the end of May, 2011, to build the casino it promised, and build it at the Columbus Boulevard site, any actual "case or controversy" as to whether Licensee abandoned its license no longer existed. Therefore, the Board did not err in determining that Keystone's petition to re-open was moot. *Venango County; Nutter.*

Nonetheless, Keystone contends the mootness doctrine does not apply here because it raised issues important to the public interest that are capable of repetition and are likely to evade appellate review. *See Commonwealth v. Baker,* 564 Pa. 192, 766 A.2d 328 (2001). More specifically, Keystone argues the Board's failure to hold adequate evidentiary hearings and resolve disputed issues of fact regarding Licensee's post-licensing actions raises issues that are capable of repetition because Licensee is likely to return to the Board for further relief from the deadlines to comply with the conditions of its license.

We disagree. As discussed above, the Board did not err or violate Keystone's

rights in denying Keystone's petition to re-open without an evidentiary hearing on Licensee's post-licensing actions. Keystone lacked both the required standing and legal authority under the Act to petition to re-open the licensing proceedings and revoke Licensee's license. Moreover, the Board's extension order prohibits Licensee from relocating its casino. Therefore, there are no unresolved issues capable of evading appellate review.

## IV. Conclusion

For the above reasons, we affirm the Board's orders denying Keystone's petition to intervene in Licensee's extension proceeding and denying Keystone's petition to re-open the licensing proceedings. Further, we quash Licensee's petition for review, filed at 2145 C.D. 2009, to the extent it seeks review of the Board's decision and order granting Licensee's extension petition.

Judge LEAVITT did not participate in the decision in this case.

Judge BROBSON did not participate in the decision in this case.

Judge BUTLER did not participate in the decision in this case.

## *ORDER*

**AND NOW,** this 16th day of September, 2010, Petitioner Keystone Redevelopment Partners' petition for review, filed at 2145 C.D. 2009, is **QUASHED** to the extent it seeks review of the Pennsylvania Gaming Control Board's order granting Respondent Philadelphia Entertainment and Development Partners' petition for extension of time to make slot machines available for play. The Board's orders denying Petitioner Keystone's petition to intervene in the extension proceeding and petition to

re-open license application proceedings are **AFFIRMED.**